## MARY MULDOON v. JOHN C. MOORE.

1. Under the "Act for the relief of creditors against heirs and devisees" (*Rev.*, p. 476), a creditor of a deceased debtor may recover in an action against his heir or devisee either (1) if defendant pleads properly a special judgment requiring the debt to be made only out of lands descended or devised, and which have not been *bona fide* aliened before the commencement of the action, or (2) if defendant fails to plead or pleads falsely or improperly a general judgment as if for the debt of defendant, or (3) if it is made to appear in the manner prescribed that such lands have been so aliened before action brought, a like general judgment, but only for the value of the lands.

2. A judgment against an heir or devisee upon his individual debt, and levy of an execution issued thereon upon lands descended or devised prior to the commencement of an action against the heir or devisee upon a debt of the ancestor or testator, is not an alienation within the meaning of that act.

On case certified.

The state of the case shows that in February, 1890, William Moore died seized of certain lands in Union county, leaving John C. Moore his sole heir at law; that on May 17th, 1892, Mary Muldoon recovered a judgment in the Union Circuit against John C. Moore as heir of William Moore, upon a debt of the latter, and that execution on the judgment was levied on the lands above mentioned; that creditors of John C. Moore had recovered judgments against him whereon executions had been issued and levies made upon the same lands— the earliest of those judgments was entered March 5th, 1892, and the latest May 12th, 1892; and that the lands were sold under all the executions but did not produce enough to satisfy them.

A rule to show cause why the sheriff should not be directed to pay to Mary Muldoon the amount of her judgment in full and prior to any payment to the judgment creditors of John C. Moore, was allowed. The latter appeared to the rule, and the facts were agreed upon by the respective parties, whereupon the Circuit Court certified to this court the question

whether, upon the facts, the judgment of Mary Muldoon is entitled to priority in payment over the other judgments.

Argued at February Term, 1893, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *Thomas F. McCormick.*

For the defendants, *John H. Jackson, William A. Coddington* and *William R. Coddington.*

The opinion of the court was delivered by

MAGIE, J.   The question presented requires for its solution a determination as to when and how lands of a deceased debtor may be made to answer for his debts by means of an action against his heir at law, to whom the lands have descended.

At common law a creditor by specialty which bound the obligor and his heirs, had a right of action thereon against the heir at law of his deceased debtor.   If in such an action the heir admitted assets, *i. e.,* lands held by descent from the debtor, the only judgment permitted was a special one for the recovery of the debt to be levied out of such lands as the heir had not *bona fide* aliened before action brought.   Upon lands aliened before action brought the creditor gained no right, but his judgment related back to the commencement of the action and could be executed upon any such lands though aliened thereafter.   If the heir permitted judgment in such an action to pass against him by confession without showing the assets descended, or by *non sum informatus,* or *nil dicit,* or falsely pleaded *riens per descent,* such judgment was a general one as if upon the debt of the heir.   *Bac. Abr., tit. "Heir"* (*F*); *Com. Dig., tit. "Assets"* (*A*); 2 *Saund.* 7, note 4; *Herbert's Case,* 3 *Coke* 11; *Vin. Abr., tit. "Heir"* (*C*); *Com. Dig., tit. "Pleader"* (*z E* 5).

Such a general judgment was enforceable by the ordinary processes of execution, including an *elegit,* under the act of 13 *Edw. I., c.* 18, whereby the plaintiff had delivered to him a

moiety of the lands of the defendant, to be held until he obtained satisfaction of his judgment. But the special judgment was enforced only by an *extent*, whereby the plaintiff had delivered to him the whole of the lands of his deceased debtor which had descended to his heir and which had not been *bona fide* aliened by the latter before action brought. 2 *Rol. Abr.* 71; *Bac. Abr.*, *tit. "Heir"* (4, 1); 2 *Saund.* 7, note 4; *Tidd* 853; *Tidd App. CXLI.*, § 86 (2 *ed.*).

By the provisions of the statute of 3 and 4 *W. & M.*, c. 14, a liability to action, precisely similar to that of the heir at common law, was imposed upon the devisee of lands of a deceased debtor. The act further provided that if it appeared in any action against an heir or devisee, under the pleadings prescribed, that lands descended from or devised by the deceased debtor had been *bona fide* aliened before action brought, then such heir or devisee was liable and a judgment should pass against him for the value of the lands so aliened as if upon his own proper debt. A mode was provided by which the value of such lands was ascertained.

The "Act for the relief of creditors against heirs and devisees," passed March 7th, 1797 (*Pat. L.*, *p.* 243), adopted and re-enacted, with modifications, the provisions of the common law and of the statute 3 *W. & M.*, c. 14, on this subject. It extended the remedy to every creditor whether by simple contract or specialty and whether heirs are mentioned therein or not. It expressly gave a right of action to such creditors against the heir and devisee of a deceased debtor, and it provided that such an heir or devisee should be liable and chargeable for a false plea in the manner any heir would have been for a false plea pleaded by him in an action of debt upon specialty, or for not confessing the lands, &c., to him descended.

The act further provided that if any heir was liable for a debt of his ancestor in regard of any lands descended to him, and should alien such lands before action brought, he should be answerable for the debt to the value of the lands aliened, and execution on a judgment therefor should go for such

value as if for the proper debt of the defendant, but lands *bona fide* aliened before action brought should not be liable to such execution. Provision was also made for determining in such actions the value of lands so aliened, and it was expressly declared that a judgment against an heir by confession of the action without confessing assets, or upon demurrer or *nihil dicit*, should be for the debt and damages without any writ to inquire of the lands, &c., so descended.

The provisions thus made respecting actions against heirs were also extended to actions against devisees.

From this review it appears that, after the passage of the act of 1797, a creditor of a deceased debtor might recover in an action against the heir or devisee either (1) (if defendant pleaded properly) a special judgment requiring the debt to be made only out of lands descended or devised to defendant, which had not been by him *bona fide* aliened before the commencement of the action, or (2) (if defendant pleaded falsely or improperly or failed to plead) a general judgment for the debt as if it were a debt of defendant, or (3) (if it was made to appear in the manner prescribed that such lands had been *bona fide* aliened before action brought), a like general judgment, but only for the value of those lands. Lands so aliened before action brought were wholly exempt from the judgment and execution of the creditor of the ancestor or testator, but lands aliened after action brought were chargeable therewith.

This act remains in force and unmodified. *Rev.*, *p.* 476.

The judgments permitted by this act were enforced by the processes of execution in use at the time of its passage. The enforcement of judgments by *elegit* and *extent* had long been abandoned. By the "Act subjecting real estate in the Province of New Jersey to the payment of debts and directing the sheriff in his proceedings thereon," passed December 2d, 1743 (*Allinson L.*, *p.* 129), lands had been made liable for and chargeable with debts and made chattels for the satisfaction of debts in like manner as personal estates were. Provision was thereby made that lands might be sold by the sheriff by *fieri*

*facias* or similar writ for the satisfaction of the judgment debt, in case of a deficiency of chattels to make the same.

The special judgment entered in the action of a creditor against an heir or devisee for the recovery of the debt from lands descended or devised and not aliened before the commencement of the action, was doubtless deemed enforceable under this act, for it was held that lands of a decedent were leviable upon under an execution on a judgment against his executors or administrators.    *Den, Ely* v. *Jones, Coxe* 131.

But by the "Act making lands liable to be sold for the payment of debts," passed February 18th, 1799 (*Pat. L., p. 369*), which repealed the act of 1743, it was enacted that no lands, &c., of a testator or intestate should be sold or affected by a judgment or execution against his executors or administrators, and provision was made that executors or administrators might, upon a deficiency of personal assets, make sale of lands to pay debts under order of the Orphans' Court.

The same act, in prescribing the form of executions for the sale of lands by sheriffs, &c., contained this clause: "But when such execution shall be issued against terre-tenants or heirs or devisees (unless they shall have made their estate liable by false pleading or otherwise), it shall only command the sheriff or other officer that of the lands, tenements, hereditaments and real estate whereof the ancestor, testator or person deceased was seized on the day when the said lands * * * became liable as aforesaid or at any time afterwards or at the time of his or her death, as the case may require, he cause to be made the debt," &c.   This clause now forms a part of section 1 of the "Act respecting executions," approved March 27th, 1874.   *Rev., p.* 389.

The legislation under consideration formed part of the revision made by Judge Paterson, and was criticised with some severity in a note to be found in 4 *Griff. L. R.* 1286 (1821–2), upon two points—(1) Because, while subjecting lands to the payment of the debts of a deceased owner, by the medium of a sale by his executor or administrator under the control of the Orphans' Court, yet it retained the action against the heir

and devisee of such owner for such debts; and (2) because no lien upon such lands was created in favor of creditors, by reason of which their debts might be rendered incapable of enforcement against the lands in whole or in part by a previous alienation by the heir or devisee.

The latter defect was, at least partially, obviated by the supplement to the act of 1799 above cited, passed December 12th, 1825, which provided that a sale of lands of a deceased debtor, made by his executor or administrator under an order of the Orphans' Court obtained within a year after his decease, would pass title notwithstanding any alienation or encumbrance by the heir or devisee. *Harr.* 130.

The act of 1797 has, however, never been modified or repealed, and the provision of the act of 1799, directing the form of execution upon a special judgment against heirs and devisees, remains part of our law. It is obvious that there was no intent to supersede the provisions of the act of 1797 by those of the act of 1799, and it has been frequently so held. *New Jersey Insurance Co.* v. *Meeker*, 8 *Vroom* 282; *Stone* v. *Todd*, 20 *Id.* 274; *Dodson* v. *Taylor*, 24 *Id.* 200.

It results, therefore, that in the action of Mary Muldoon against John C. Moore, as heir of William Moore, upon the debt of the latter, she might have been entitled to a special judgment for the recovery of the debt out of the lands of William Moore, which descended to John, and which he had not *bona fide* aliened before the commencement of her action; that upon such a judgment an execution could issue, such as is directed in that clause of section 1 of the Executor's act which has been cited, and that a sale of such lands thereunder would entitle her to the money raised thereby.

But the judgment creditors of John C. Moore insist that the lands in question had in fact been aliened by the heir, and so as to deprive Mary Muldoon of the right to enforce such a judgment thereon. This contention is put upon the ground that some of them had obtained judgment against John C. Moore for their individual debts and had levied their executions on the lands prior to the commencement of the Muldoon

action, and others of them had obtained like judgments and had levied their executions thereon before she had obtained her judgment.

In dealing with this contention we are somewhat embarrassed by the deficiency of the state of the case. It does not contain the record of the Muldoon judgment, nor does it state when her action commenced. Obviously it must have been commenced before the entry of some of the judgments against John C. Moore, but it may have been commenced after the entry of others. And, although we cannot, by inspection of the record, ascertain the precise nature of the judgment in the action, yet we are bound to assume, from the agreement of counsel, that it was a special judgment for the recovery of her debt out of the lands descended from William Moore, which John, his heir, had not *bona fide* aliened before action brought.

The execution issued on the Muldoon judgment is before us and is plainly irregular. In the first place it commands the sheriff to make the judgment out of the goods and chattels which had been William Moore's, and no such command could issue upon a judgment against an heir. In the next place it commands the sheriff that, in default of sufficient goods and chattels, he make the judgment out of lands of which William Moore died seized, and of which John, his heir, was seized on the day of the recovery of the judgment. Properly it ought to have directed the sheriff to make the judgment out of such of those lands as John, the heir, was seized of on the day of the commencement of the action. Such was the form of the *extent* under the English practice (*Tidd App. XLI.*, § 86), and it would conform to the plain intent of our statutes. It is true that in some late books forms of judgments against heirs in such actions are given which seem to justify such an execution. *Bess. L. Prec.* 139 ; *Jeffery* 396. But, as we have seen, the law fixes the liability of unaliened lands as of the commencement of the action, and a judgment and execution thereon should have relation to that day. A judgment and execution having relation to the day of the entry of the judgment opens to question whether the

lands, which, at the commencement of the action, were liable, but have subsequently and before judgment been aliened, can be subject to such judgment.

But it is not deemed necessary to settle whether the judgment creditors of John C. Moore, who are invoking the equitable jurisdiction of the court to direct the disposition of money raised under its process, may take advantage of irregularities in the Muldoon proceedings, or whether, upon such an execution as appears in the case, the judgment could be enforced as against an alienee from John C. Moore by an alienation since the commencement of the Muldoon action.

The contention principally made, and which will alone be considered, is this, that a judgment against an heir, upon his individual debt, and a levy under an execution thereon, constitute an alienation within the meaning of the act for the relief of creditors against heirs and devisees. If this contention is unfounded then the judgment creditors of John C. Moore have no ground to stand upon.

Alienation is said by Blackstone to comprise any method whereby estates are voluntarily resigned by one and accepted by another, whether that be effected by sale, gift, marriage settlement, devise or other transmission of property by the mutual consent of the parties. 2 *Bl. Com.*, § 287. The transmission of title to lands by virtue of a judgment against the owner and an execution, levy and sale by the sheriff, was unknown to the law when the act 3 and 4 *W. & M.*, c. 14, was passed. When our act of 1797 for the relief of creditors against heirs and devisees became law, lands had, by the act of 1743, been made liable to be sold under judgments; and that act provided that the sheriff's deed should vest in the purchaser the estate the defendant had therein at or before the judgment, which provision is now contained in section 7 of the Sale of Land act. *Rev.*, *p.* 1043.

Whether a sale by a sheriff of lands descended or devised under a judgment against an heir or devisee for his individual debt, made before the commencement of an action against him upon a debt of the ancestor or testator, would be an aliena-

tion within the meaning of the legislation under consideration, is not the question before us, for the Muldoon action was commenced and judgment was entered in it before there was a sale under the judgments of the individual creditors of the heir.

The contention is that the entry of their judgments and the issuing of executions thereon, which were levied on the lands, constituted such alienation.

But this contention cannot prevail. The effect of a judgment, 'execution and levy is prescribed by statute. The title to the lands levied on is not thereby transmitted from the defendant in execution to another person. The defendant has possession and right of possession and cannot be ejected until after sale, and then only by the purchaser who obtains the sheriff's deed. There is, therefore, no transmission of title by the mere judgment, execution and levy.

If it be urged that the sale under execution relates to and affects the title to lands as of the date of the judgment, and that, in consequence, the judgment must be deemed to have divested the defendant's title, the response must be that the provisions as to the effect of sales under judgments must be construed in consonance with the other provisions contained in the same acts, whereby a creditor of the ancestor or testator is furnished with a special form of execution, by means of which a special judgment obtained against the heir or devisee for a debt of the ancestor or testator may be made out of lands not *bona fide* aliened before the commencement of the action. Thus construed it is evident that it was not intended that a special judgment was to be rendered ineffective by the previous entry of a judgment against the heir or devisee for his personal debt, though followed by execution and levy and a subsequent sale.

The question before us is novel and is solved by a construction of the legislation we have considered. In *Den* v. *Jaques*, 5 *Halst.* 259, a question arose upon the act of an heir in mortgaging for his debt lands which had descended to him before action brought upon a debt of the ancestor. In this

court the mortgage was held to be an alienation within the meaning of the act. The Court of Errors reversed the case upon that point but no opinion is reported. *Halst. Dig.* 634.

The result is that the judgments of John C. Moore's individual creditors did not amount to an alienation of the lands descended to him from William Moore, but those lands were liable, notwithstanding those judgments, to answer for the debt of William Moore to Mary Muldoon upon her judgment.

The Circuit Court is advised that Mary Muldoon is entitled to priority in payment over the other judgment creditors out of the proceeds of the lands.