Brinkerhoff v. Ransom.

Andrew H. Brinkerhoff, Garrabrant R. Alyea, The Hillside Cemetery Association et al., appellants,

v.

Edward A. Ransom, trustee for Harry F. Watson and Thomas P. Watson, respondent.

[Filed November 14th, 1898.]

1. A debtor died seized of land encumbered by mortgage and assessment for all it was worth, and left a will devising it to his widow and children. Several years afterwards, when the mortgage was being foreclosed, the devisees, in ignorance of the debt, conveyed the land to a near relative, in the hope that the latter by his enterprise might make it more valuable. This hope was realized. Then the creditor sued the devisees-at-law for their testator's debt, and the devisees pleaded that the estate devised was worth only $1, and that they had aliened it before action brought. To this the creditor replied that it was worth more than $1, viz., $50,000, but raised no question as to the alienation. On the trial the jury found that the estate devised was worth only $1, as the devisees had alleged. On the verdict the creditor entered judgment for the debt to be levied of the estate devised, issued execution thereon, and at the sheriff's sale became the purchaser for a nominal price. He thereupon filed a bill in chancery to set aside as fraudulent the conveyance made by the devisees.—*Held*, that he was not entitled to the aid of a court of equity in that behalf, and that the bill should be dismissed.

2. In an action at law against heirs and devisees, an averment in a plea that the defendants had aliened their ancestor's estate before the action was commenced, is material and traversable, and a failure on the part of the plaintiff to reply thereto is an admission of a *bona fide* alienation.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *Ransom v. Brinkerhoff, 11 Dick. Ch. Rep. 149.*

Mr. *Charles L. Corbin,* for the appellants.

Mr. *Edward A. Ransom* and Mr. *James B. Vredenburgh,* for the respondent.

The opinion of the court was delivered by

DIXON, J.

On February 17th, 1891, the ordinary of the State of New Jersey, suing for the use and benefit of Harry F. Watson and Thomas P. Watson, recovered a judgment in the supreme court against Andrew H. Brinkerhoff, Ellen A. Berry, Martha Alyea and Kezia Van Riper, the devisees of George C. Brinkerhoff, deceased, for the sum of $50,000 and costs, " to be levied of the lands of which the said George C. Brinkerhoff died seized, and which were devised to the said defendants by his last will." By virtue of an execution on this judgment the sheriff of Bergen county, on October 10th, 1892, made sale and conveyance to Addison Ely, as trustee for said Harry and Thomas Watson, of the land now in controversy, containing about one hundred and forty acres. The price was nominal only. The title of Ely is vested in the complainant, who has filed the present bill as trustee and for the benefit of said Harry and Thomas, to set aside as fraudulent and void certain conveyances made by the said devisees and their grantees before the action at law was instituted. It thus appears that, discarding mere names, the real prosecutors of the suit at law and of this suit are the same persons, Harry F. and Thomas P. Watson, and the question is whether they present a case calling for the intervention of a court of equity.

The testimony shows that the land was the homestead farm of George C. Brinkerhoff, and comprised substantially all the property that he owned at his death, in March, 1879. It consisted about equally of upland and meadow, the latter of very little value, and was then encumbered by a mortgage for $12,000 and a municipal assessment, levied in 1875, for $1,223. In April, 1882, his widow (who had remarried) and his children found themselves unable to pay the interest on the mortgage, the assessment was rapidly increasing by the accumulations legally consequent upon it, the taxes were in arrear, and the mortgagees had instituted a suit to foreclose the equity of redemption. At this time the rights of the devisees in the testator's property were a life estate in one-third for the widow, Kezia Van Riper, subject thereto a legacy of $15,000 to the

daughter Ellen, and one of $20,000 to the son, Andrew, which were charged upon the realty, and the fee of the residue to the daughters Ellen and Martha and the son, Andrew.

Seeing that their estate was likely to be swept away by fore-closure, the family endeavored to sell the farm to outsiders, but could not, and then, in the hope that something might be saved to them from it, they conveyed it, on April 22d, 1882, to the son, Andrew, and Garrabrant R. Alyea, the husband of the daughter Martha. Their expectation was that the available part of the farm should be converted into a cemetery, a project which the testator himself had once had in mind. Late in the year 1883 this expectation was realized by the organization of the Hillside Cemetery Association and the conveyance to it of about forty acres of the farm. At this time none of the devi-sees was aware, nor was Garrabrant R. Alyea, that any claim existed against the testator's estate by reason of his bond to the ordinary, upon which the judgment before mentioned was re-covered. In the lifetime of the testator his family had heard of some undefined trouble because of it, but afterwards he had told them it was all settled, and the lapse of several years without further notice had confirmed his assurance. During this period, even, the estimated value of the farm scarcely exceeded the encumbrances, and it was impossible to sell the devisees' interest for anything. After receiving the conveyance in April, 1882, and as well before as after the organization of the cemetery com-pany, Alyea and Brinkerhoff devoted much time to the prepara-tion and improvement of the property for cemetery purposes. They also both incurred personal obligations, and Alyea ex-pended considerable money to the same end. In consequence thereof it may be that in July, 1890, when the Watsons insti-tuted the suit at law, the property had acquired a value beyond the encumbrances.

Shall this court aid the Watsons in securing that value towards the payment of their claim?

The circumstances satisfy us that that value was the result of the efforts of Andrew H. Brinkerhoff, not as devisee of his father but in his own behalf and in behalf of his sisters, and of

the efforts and money of Garrabrant R. Alyea, put forth in the honest belief that they were *bona fide* purchasers of the farm. Neither of them was under any personal obligation to the Watsons, and it is not equitable that the profits of their enterprise should be taken from them for the Watsons' benefit. Had the latter proceeded to enforce their claim with reasonable diligence the enterprise of Alyea and Brinkerhoff would not have been undertaken or would have been soon abandoned. A brief reference to dates will make this evident.

George C. Brinkerhoff's bond to the ordinary was given in June, 1872, to secure the faithful performance of duty by Frederick A. Watson (a half-brother of the complainants) as the administrator of James S. Watson, their father. The administrator's default occurred in the lifetime of George C. Brinkerhoff, before 1879, but not until five years afterwards, in May, 1884, was application made to the ordinary for his consent to the prosecution of the bond. At that time the complainants had both attained their majority, and if they had then proceeded against the devisees the labors of Alyea and Brinkerhoff would have been saved, but nothing substantial would have been realized on the complainants' claim. They did not proceed, however, until July, 1890, and during all this interval not only the public records but the work upon the ground also showed that Brinkerhoff and Alyea were acting as *bona fide* purchasers of. the farm. Under these circumstances, if the complainants intended ever to challenge the *bona fides* of the purchase, their delay was inequitable. But we think the record of the suit at law clearly indicates that they had no such intention, and fairly excludes them from now making the attempt. And this brings us to consider that record.

The declaration, after setting forth the bond of George C. Brinkerhoff and the breach of its condition in his lifetime, alleged that he had died March 11th, 1879, leaving a will devising to the defendants lands of great value, which they then still held. The defendants' pleas deny the making of the bond and the breach, admit the devise of the equity of redemption in the farm, setting forth the pertinent clauses of the will, and aver

that that equity was of small value, to wit, of $1 and no more, and had been sold, aliened and made over by the devisees thereof before the commencement of the suit. The plaintiff, replying to these pleas, joined issue on the making and breach of the bond, and as to the other pleas averred that the equity of redemption so devised was of great value, to wit, of the value of $50,000, and thus concluded to the country.

Although these pleadings were not in the form prescribed by the Heirs and Devisees act (*Gen. Stat. p. 1679*), they were in substance equivalent, and presented issues for an inquiry by the jury as to the value of the land devised. On the trial of these issues in the Bergen circuit the jury found the making and breach of the bond, as the plaintiff had alleged, and that the equity of redemption devised to the defendants was of the value of $1 and no more, as the defendants had alleged.

The replication of the plaintiff was an admission that the devisees had, *bona fide*, aliened the equity of redemption before suit brought, for it is a rule in pleading that where in the pleading of one party there is a material averment which is traversable, but which is not traversed by the other party, it is admitted (*Toland* v. *Sprague, 12 Pet. 300, 335; Ballantine* v. *Haight, 1 Harr. 196, 200; 1 Chit. Pl. 611*); and such an admission estops the party from contradicting that which was admitted. *Cowlishaw* v. *Cheslyn, 1 C. & J. 48.*

The averment in the pleas that the devisees had before the commencement of the action aliened the estate devised was certainly a material one, for, if true, the plaintiff's judgment, according to the statute, could only be that the defendants should answer for their ancestor's debt to the value of the estate devised, as if the same were their own proper debt, while, if false, the plaintiff would be entitled to a special judgment to levy the debt of the lands devised. Note to *Jeffreson* v. *Morton, 2 Saund. 6, 8; Muldoon* v. *Moore, 26 Vr. 410; Fredericks* v. *Isenman, 12 Vr. 212.* It was also a traversable averment, and in the traverse would be involved the question whether the alienation was *bona fide.* Thus, in *Gooch's Case, 5 Rep. 60,* where the heir had pleaded "*riens per descent* the day of the

Brinkerhoff v. Ransom.

writ purchased," the plaintiff was allowed to prove that a feoffment made by the heir before action brought was made of fraud and covin to defraud the plaintiff and so was void as to him by the statute of *13 Eliz. ch. 5*. On this proof the king's bench rendered judgment for the plaintiff, thus holding that an alienation fraudulent in fact was no alienation in law, and, *e converso*, that an alienation in law was one not fraudulent in fact.

When, therefore, in the record now before us, the plaintiffs left undenied the averment of alienation before suit brought, they conclusively admitted an alienation valid in law, *i. e.*, *bona fide*, and on that admission they proceeded to deny the other averment as to the value of the lands, an averment which, in the absence of a *bona fide* alienation, would be utterly immaterial. They thus put aside the opportunity legally presented by the devisees for a full and fair trial before a jury of the *bona fides* of the conveyances which they now seek to overturn as fraudulent. Having had their day in court and having declined the duly-proffered contest, it is but just that they should not again vex their adversaries.

But it is urged the judgment entered in the supreme court that the debt should be levied of the land devised, being one which could be lawfully rendered only in case the land had not been *bona fide* aliened before suit brought, legally implies the non-existence of such an alienation and operates as an estoppel against the then defendants, one of whom, Andrew H. Brinkerhoff, appears still to have some estate in the land. That may be true, and perhaps a court of equity cannot deprive the complainants of whatever legal advantage that judgment and its execution have given them in respect to the estate devised. But the question whether a court of equity shall render active assistance to enforce the judgment and execution is a very different matter. It is not enough that complainants come into a court of equity with a legal advantage; they must come with a cause essentially equitable. As was said by Chancellor Vroom in *Disborough* v. *Outcalt, Sax. 298:* "Courts of equity consider the rights growing out of a judgment and execution at law as

legal rights, and while this court will, on various principles of equity, aid the courts of common law in the prosecution of legal rights, it will not undertake to enlarge or extend them. * * * A court of equity will in some cases aid execution creditors to obtain satisfaction of their demands. But to warrant its interference there must be some equitable ground presented. The court will then act on its own established principles."

According to those principles we think the complainants are not entitled to our aid.

The intrinsic worthlessness of their claim against the estate of their debtor, their laches in failing to attempt its enforcement while the defendants, ignorant of its existence, were trying to improve property which they honestly believed to be their own, the entire lack of any obligation, legal or equitable, on the part of the defendants to yield up the fruits of their efforts to the complainants, the refusal of the complainants to advance, at the proper time and before a competent tribunal, the claim now made and their admission upon the record that it was groundless, justify a court of equity in denying them relief.

The decree below should be reversed and the bill dismissed.

*For reversal*—Collins, Depue, Dixon, Lippincott, Ludlow, Van Syckel, Adams, Bogert, Hendrickson, Nixon, Vredenburgh—11.

*For affirmance*—None.