THE HOTEL REGISTRY REALTY CORPORATION v. IDA K.
STAFFORD.

Argued November 5, 1903—Decided February 23. 1904.

1. Implied repealers are not favored in the law. Ordinarily an in-
   tent to repeal a former statute will not be implied unless the
   subsequent enactment is either clearly repugnant to the former,
   or is manifestly intended to cover the same subject-matter by
   way of revision, and thereby to furnish a complete substitute for
   the former.
2. That portion of the revised Attachment act (*Pamph. L.* 1901, *p.*
   158, § 1), which authorizes the issuance of an attachment against
   the property of absconding and non-resident debtors upon the
   filing of an affidavit, is not impliedly repealed by section 84 of
   the revised Practice act (*Pamph. L.* 1903, *p.* 560), which permits
   an action to be commenced by attachment in certain cases upon
   proof being made of the necessary facts to the satisfaction of the
   court or a judge or commissioner.

On motion to quash writ of attachment.

Before Justices Fort and Pitney.

For the motion, *Malcolm MacLear.*

The opinion of the court was delivered by

Pitney, J. Upon an affidavit, made by the agent of the
plaintiff, setting forth that the defendant was not, to de-
ponent's knowledge or belief, resident in the state, and that
she owed to the plaintiff a specified sum, a writ of attach-
ment was issued out of this court against the property of the
defendant. The practice pursued was in accordance with the
first section of the revised "Act for the relief of creditors
against absent and absconding debtors." *Pamph. L.* 1901,
*p.* 158.

The defendant moves to quash the writ, on the ground
that it was issued without an order of court or proof upon
which an order could be founded. The motion is based. on

the theory that the act of 1901 is impliedly repealed, so far as the proceedings prior to the issuance of the writ are concerned, by section 84, &c., of the revised Practice act of 1903. *Pamph. L., p.* 560. The latter statute requires a judicial order to precede the issuance of a writ of attachment in all cases thereunder, while the former act (if in force) authorizes its issuance upon the filing of an *ex parte* affidavit in cases such as the present. The question at once arises whether the attachment provisions of the Practice act are intended to apply to cases of the same class as those covered by the Attachment act; and if so, whether they are intended to be exclusive of the former practice in attachment. As both statutes are revision acts, it will elucidate the whole question of legislative intent if, while comparing their supposedly inconsistent provisions, we keep in mind the history of the previous legislation on the subject.

The so-called "Attachment act" of 1901 provides in its first section (*Pamph. L., p.* 158) for the issuance of a writ of attachment against the property of the defendant upon the filing of an *ex parte* affidavit in two cases that are treated as distinct, viz.: (1) where the defendant absconds from his creditors and is not, to deponent's knowledge or belief, resident in the state at the time, and owes to the plaintiff a specified debt, or has incurrerd a specified statutory penalty; and (2) where the defendant is not, to the knowledge, &c., resident in the state at the time, and owes to the plaintiff a specified debt, or has incurred a specified penalty under a statute. The same section authorizes an attachment to be issued (3) where the court or a judge thereof, or a Supreme Court commissioner, shall make an order for the issuance of an attachment upon proof, by affidavit, of fraud which would warrant an order for a *capias ad respondendum*. Section 5 of the same act authorizes an attachment to be issued "for the debt of a deceased debtor against his executor, administrator, trustee, heir or devisee, in all cases in which the writ might have been issued against such debtor immediately prior to his decease," the attachment to be executed upon real estate

descended or devised and upon personal estate in the hands
of the executor, administrator, &c. Succeeding sections of the
act contain elaborate provisions respecting the course of ju-
dicial procedure subsequent to the issuance of the writ of at-
tachment.

In the new Practice act (*Pamph. L.* 1903, *p.* 560) section
84 authorizes an action to be commenced by attachment
against the property of any defendant against whom a sum-
mons might issue, upon proof to the satisfaction of the court
or a judge or commissioner of either of three grounds, which
for the moment may be shortly defined as follows, viz.: (1)
facts sufficient to hold the defendant to bail; (2) the ex-
istence of a cause of action arising in this state, that the de-
fendant absconds or is non-resident, and that summons can-
not be served; (3) that a cause of action existed against a
decedent which survives against his heirs or devisees, that
they, or some of them, are unknown or non-resident, and that
there is property in this state liable by law to answer such
cause of action.

Beginning at an early period, the successive legislatures
of this state have given special consideration and separate
treatment to the procedure by attachment, having for its ob-
ject the collection of debts owed by absconding or non-resident
debtors. "An act for the relief of creditors against abscond-
ing and absent debtors" was passed March 8th, 1798. *Pat.
L., p.* 296; *Rev.* 1821, *p.* 355. It was revised in 1846
(*R. S.* 1847, *p.* 48), in 1874 (*Gen. Stat.* 1895, *p.* 98) and in
1901 (*Pamph. L., p.* 158). In all these successive revisions
it was provided that the writ should be issued against absent
debtors upon the mere filing of an affidavit setting up the
facts entitling the plaintiff to this remedy.

During the same period the practice in the ordinary actions
at law by summons or *capias* has been the subject of successive
"practice acts," beginning with "An act to regulate the
practice of the courts of law," passed February 14th, 1799
(*Pat. L. p.* 355; *Rev.* 1821, *p.* 413), revised in 1846 (*Rev.*

1847, *p.* 929), in 1874 (*Gen. Stat., p.* 2534), and in 1903 (*Pamph. L., p.* 537).

By an act, approved March 10th, 1893, entitled "An act to regulate the practice of courts of law" (*Pamph. L., p.* 181; *Gen. Stat., p.* 2601), and a supplement, enacted two years later (*Pamph. L.* 1895, *p.* 103), it was provided that in cases where a *capias ad respondendum* might issue, in any action upon contract, the court might at the request of the plaintiff, upon filing the affidavits required as a foundation for an order for bail, award a writ of attachment against the property of the defendant in this state, whether the defendant be resident here or not; that such writ might be awarded against the property of individuals, co-partnerships, married women, corporations, &c.; and that the practice and procedure in relation to the issue, levy and return of the writ, and the vacation thereof, when improperly issued, should be the same as in cases of attachment against non-resident debtors.

In revising the "Attachment act" in 1901, the legislature included in it the remedy by attachment where proof is made by affidavit of fraud, such as would warrant an order for a *capias ad respondendum. Pamph. L.,* 1901, *p.* 158, § 1. And in the same session the act of 1893 and its supplement of 1895 were repealed. *Pamph. L.* 1901, *p.* 368.

But as the "Attachment act" (popularly so called) is limited by its title to the relief of creditors against *absent and absconding debtors,* it seems clear that it could not constitutionally include relief against debtors resident in the state. *Hendrickson* v. *Fries,* 16 *Vroom* 555, 563. This doubtless accounts for the fact that the legislature, in 1903, embodied in the revised Practice act so much of section 84 as provides for the commencement of an action by attachment against the property of defendant in cases where the plaintiff would be entitled to an order for bail, including female defendants, corporations and organizations, as if they were liable to arrest in civil actions. This clause of the section applies to resident as well as non-resident defendants; includes actions of tort

as well as those arising *ex contractu;* and in actions upon contract it includes unliquidated as well as liquidated demands. It thus has a scope broader than that of the third clause of section 1 of the Attachment act, broader even than that of the acts of 1893 and 1895. *Pamph. L.* 1893, *p.* 181; *Pamph. L.* 1895, *p.* 103; *Gen. Stat., p.* 2601.

The second clause of section 84 of the Practice act authorizes the commencement of suit by attachment against property upon proof being made by affidavit to the satisfaction of the court or a judge or commissioner, "that the plaintiff has a cause of action which arose in this state, the nature and particulars of which he shall specify, and that the defendant absconds from his creditors or is not a resident of this state, and that summons cannot be served; but no attachment shall issue hereunder against the rolling stock of a common carrier of another state, or against the goods of a non-resident in transit in the custody of a common carrier of this or another state." While this clause in terms includes some cases that are within the operation of the first and second clauses of section 1 of the Attachment act (that is to say, liquidated demands arising *ex contractu* against absconding and non-resident defendants), it also includes actions of tort and unliquidated contractual demands. In view of the important qualifications that the Practice act imposes upon the procedure—viz., that the cause of action shall have arisen in this state, that the attachment shall issue only upon order founded on affidavits, and that rolling stock and goods in transit shall, under certain circumstances, be exempt—it is easy to see that this clause, while not excluding demands that might be prosecuted under the Attachment act, is especially designed for actions of tort and unliquidated demands *ex contractu.*

That such was, in truth, the legislative intent appears even more probable when we consider that in its present form the clause is new legislation, apparently framed in part after two recent statutes, having for their object the acquisition of jurisdiction *in personam* against non-resident defendants by service of notice of suit upon the defendant out of the state,

or by publication and mailing of such notice. One of these statutes was intended to apply to local actions (*Pamph. L.* 1878, *p.* 141) and the other to actions *ex delicto*. *Pamph. L.* 1895, *p.* 380. For reasons to be mentioned hereafter, the effort to acquire personal jurisdiction over non-residents without their consent by means of the service of notice outside of the confines of the state would be futile. And so the revisers of 1903 properly limited the remedy to the attachment of the property of such a defendant situate in this state.

The third clause of section 84 authorizes the proceeding by attachment upon an order being made founded on affidavits showing "that a cause of action existed against a decedent which survives against his heirs or devisees, and that such heirs or devisees, or some of them, are unknown or non-residents, and that there is property in this state which is by law liable to answer such cause of action." Although this clause seems to cover in part the ground covered by section 5 of the Attachment act (*Pamph. L.* 1901, *p.* 159), its genesis is quite distinct, as will appear from what follows.

The act of March 7th, 1797, "for the relief of creditors against heirs and devisees" (*Gen. Stat., p.* 1679) authorized an action to be maintained against the heirs and devisees of a deceased debtor, whether upon simple contract or specialty and whether the heirs be mentioned therein or not. The "Attachment act" of 1798 contained no express authorization of procedure against the property of absconding or non-resident heirs or devisees, and in *Peacock* v. *Wildes*, 3 *Halst.* 179, decided by this court in the year 1825, it was held that a writ of attachment could not issue against them. Thereupon, in the revision of 1846, it was provided (*R. S.* 1847, *p.* 59, § 44) that the writ might be issued against the heir or devisee of any deceased debtor in all cases where it might lawfully have been issued against the debtor in his lifetime. In the revision of 1874 this provision was included as section 8. *Gen. Stat., p.* 98. There was still nothing to authorize attachment against the personal representatives of a deceased debtor in ordinary cases, as was repeatedly pointed out in decisions

of this court. *Haight* v. *Executors of Bergh,* 3 *Gr.* 183; *Muller* v. *Leeds,* 23 *Vroom* 366; *Connelly* v. *Lerche,* 27 *Id.* 95, 99. This was remedied by an amendment of section 8, enacted in 1899. *Pamph. L., p.* 77. The section as thus amended, with some further modifications, was carried into the revised Attachment act of 1901 as section 5. *Pamph. L.* 1901, *p.* 159.

On the other hand, the provision respecting attachment against heirs and devisees, as found in the third clause of section 84 of the revised Practice act (*Pamph. L.* 1903, *p.* 561) seems to point to the following history: Under the act of 1797, for the relief of creditors against heirs and devisees, already cited, the remedy was not in all cases confined to the lands descended or devised. If the defendant did not confess the lands, or pleaded falsely, or failed to plead, there was a general judgment *in personam* for the entire debt of the ancestor. And so the act remains. *Muldoon* v. *Moore,* 26 *Vroom* 410; *Myers* v. *Weger,* 33 *Id.* 432, 436.

In the year 1853, by a supplement to the Practice act of 1846 (*Pamph. L.* 1853, *p.* 243; *Gen. Stat., p.* 2595), an action to enforce the debt of the ancestor was authorized to be commenced by publication of notice against non-resident heirs or devisees. This act was amended in 1894. *Pamph. L., p.* 261; *Gen. Stat., p.* 2595, §§ 361, 362, 363. At the time of the enactment of the supplement of 1853 it was commonly held that a personal judgment, effective within the territory of the state, could be rendered by a state court against a non-resident defendant after notice of suit given by publication, even though he did not appear and submit himself to the jurisdiction. So far as the act of 1853 provided for a judgment *in personam* against a non-resident who did not appear, it was manifestly repealed by the fourteenth amendment of the federal constitution, as construed by the Supreme Court of the United States in *Pennoyer* v. *Neff,* 95 *U. S.* 714, 723, 733. See *Smith* v. *Colloty,* 40 *Vroom* 365, 371. It was doubtless in recognition of this situation that the legislature

of 1903, in revising the Practice act, confined the remedy against non-resident heirs or devisees to a proceeding *quasi in rem* by attachment of their property in this state, a method of procedure whose validity is expressly recognized in Pennoyer *v.* Neff.

Not only has the third clause of section 84 of the new Practice act an origin independent of section 5 of the Attachment act, but in its scope it is different in that it includes actions upon demands not liquidated (*New Jersey Insurance Co.* v. *Meeker*, 8 *Vroom* 282) and is limited to suits against the heirs or devisees, not including the personal representatives.

To summarize, we have seen, as a matter of legislative history, that the proceeding by foreign attachment and the ordinary procedure of the courts of common law have customarily been treated in separate legislative enactments. That at each successive period, when the legislature has entered upon a policy of general revision, the Attachment act and the Practice act have been separately revised. The revised Attachment act of 1901 and the revised Practice act of 1903 are only two among many revision acts that have been passed by the legislature during the past few years in the manifest effort to rearrange and codify all the important portions of our statute law. We have seen that the provisions of section 84 of the Practice act have a legislative origin, separate and distinct from that of the provisions of the Attachment act, with which they are supposed to conflict. We are thus directed to the antecedent legislation that section 84 may be understood as superseding, and find that it lies outside of the Attachment act. We find that the latter act (saving, perhaps, the third clause of section 1) is confined in its scope to liquidated demands arising *ex contractu* or by penal statute (*Jeffery* v. *Wooley*, 5 *Halst.* 123; *Barber* v. *Robeson*, 3 *Gr.* 17), while the Practice act authorizes attachments in actions of tort and in those founded on contract for demands not liquidated. We have seen that the purview of the two

enactments is further differentiated by the limitation of one to relief against absconding and absent debtors.

It may further be remarked that section 84 of the Practice act is not by its terms exclusive of the former practice by attachment. It permits, but does not require. So far as cases covered by the Attachment act are concerned, it furnishes a concurrent remedy.

Still further evidence rebutting any presumed intent to repeal the Attachment act is found in section 86 of the Practice act, where, after prescribing that upon filing with the county clerk the order awarding the writ of attachment, &c., the clerk shall issue a writ of attachment for the sum directed, the section proceeds to declare that "the practice and procedure in relation to the said writ, its effect, levy and return, and in relation to the custody and sale of the personal property attached, shall be the same as in cases of attachment against non-resident debtors." This provision owes its origin to the act of 1893 and its supplement of 1895, already referred to. *Pamph. L.* 1893, *p.* 181; *Pamph. L.* 1895, *p.* 103. It plainly recognizes the Attachment act as remaining in full force for the purpose of regulating the practice and procedure. To say that the legislative intent was to repeal the act of 1901 with respect to everything that precedes the issuing of the writ, and to leave it in full force and effect with respect to everything subsequent thereto, seems to us inadmissible. A repealer, or amendment to this effect, would more conveniently and sensibly have been accomplished by the passage of an act avowedly supplementary to the Attachment act of 1901.

Implied repealers are not favored in the law. The question is one of legislative intent in each case. Where the later statute is not necessarily repugnant to the former, but on a fair construction may be treated as cumulative or supplementary, so that both acts may stand together, the intent to repeal is not implied from the fact that the later legislative provision differs from the earlier.

It is not necessary to rehearse what has been so often said

in the reported decisions as to the *criteria* for determining in a given instance whether there is an implied repealer. The following cases, among others, in our own courts, may be referred to: *McNeeley* v. *Woodruff,* 1 *Gr.* 352, 356; *Naylor* v. *Field,* 5 *Dutcher* 287; *McGavisk, Collector,* v. *State, Morris and Essex Railroad Co., pros.,* 5 *Vroom* 509, 511; *Ruckman* v. *Ransom,* 6 *Id.* 565, 566; *Landis* v. *Landis,* 10 *Id.* 274, 277; *Roche* v. *Mayor, &c., of Jersey City,* 11 *Id.* 257, 262; *Mulligan* v. *Cavanaugh,* 17 *Id.* 45, 49; *De Ginther* v. *New Jersey Home, &c.,* 29 *Id.* 354, 357; *Camden* v. *Varney,* 34 *Id.* 325, 329; *Bracken* v. *Smith,* 12 *Stew. Eq.* 169, 171; *Mersereau* v. *Mersereau Co.,* 6 *Dick. Ch. Rep.* 382, 385.

In the case presented there is neither repugnancy nor a coincidence of subject-matter, nor evidence that by way of revision the earlier statute is superseded.

The motion to quash the writ of attachment will be denied, with costs.