CHARLES J. McCARTHY AND DAVID W. McCARTHY, PART-
NERS, &c., DEFENDANTS IN ERROR, v. MARY MULLEN,
EXECUTRIX, &c., OF TIMOTHY FLYNN, DECEASED,
PLAINTIFF IN ERROR.

Submitted March 27, 1911—Decided November 20, 1911.

1. Under the "Act for the relief of creditors against heirs and dev-
   isees," passed March 7th, 1797 (*Pat. L., p.* 243; *Gen. Stat.* 1895,
   *p.* 1679), where a devisee dies without selling or aliening the
   lands devised, liability for the debts of the devisor, in respect
   of the lands devised, devolves not upon the personal represen-
   tatives, but upon the heirs and devisees of the deceased devisee
   of the original debtor.
2. *Congar* v. *Brady*, 33 *Vroom* 641, overruled.

On error to Sussex County Circuit Court.

For the plaintiff in error, *Theodore E. Dennis.*

For the defendants in error, *Coult & Dolan.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR. The defendants in error, who were
plaintiffs below, by their declaration averred that one Thomas
Flynn in his lifetime was indebted to them for goods sold and
delivered, money loaned, &c., and being so indebted departed
this life leaving a last will and testament, whereby he devised
and bequeathed to Timothy Flynn all his estate, both real and
personal; that the said Timothy Flynn thereby became pos-
sessed of more than sufficient real and personal property to
meet the debt so due and owing from the said Thomas Flynn
to the plaintiffs; and that thereafter the said Timothy Flynn
departed this life leaving a last will and testament, whereof
Mary Mullen, the defendant, is the sole executrix; that
Thomas Flynn in his lifetime promised the plaintiffs to pay
to them the said indebtedness, yet the said Thomas Flynn in
his lifetime, and the said Timothy Flynn, his devisee, since

the death of the said Thomas, and the said Mary Mullen, executrix, since the death of the said Timothy, have not paid the same, or any part thereof, but, on the contrary, have refused and still do refuse to pay the same. The defendant demurred, on the ground that the declaration disclosed no ground of recovery against her as executrix of Timothy Flynn. The Circuit Court overruled the demurrer, and after assessment of the damages rendered final judgment in favor of the plaintiffs. To review this judgment the defendant sued out the present writ of error.

As will be seen presently, the action, if it have legal foundation, must rest upon the "Act for the relief of creditors against heirs and devisees," passed March 7th, 1797, as a part of what is known as Judge Paterson's revision, and which still remains unrepealed. *Pat. L., p.* 243; *Gen. Stat.* 1895, *p.* 1679.

The court below in overruling the demurrer did so upon the ground that by this act the liability imposed upon a devisee of the original debtor is of a personal nature, and survives against the personal representatives upon the death of such devisee; relying upon the decision of the Supreme Court in *Congar* v. *Brady,* 33 *Vroom* 641.

Before proceeding to deal with this question (which is the only question that has been argued before us), we may first dispose of the suggestion that arises out of the averment of the declaration that Timothy Flynn became possessed of certain *personal* property upon the death of Thomas Flynn. Defendants in error do not rely upon this as a ground of recovery against the executrix of Timothy Flynn, nor is it sufficient to warrant such a recovery. An action at law would not lie against Timothy, *as legatee,* for the debt of Thomas. The creditor should sue Thomas' executor, or, if barred of such suit, should proceed as provided in the Orphans Court act. *Pamph. L.* 1898, *p.* 742, §§ 77, 78. It is not averred that Timothy Flynn was the executor of Thomas; and were this true it would not render his executrix liable in this action, for under our statute concerning executors (*Gen. Stat., p.* 1425, *pl.* 2), the executor of an executor does not represent the first testator. Nor is it averred that Timothy Flynn, in considera-

tion of having received the property of Thomas Flynn, or for any other consideration, made Thomas' debt his own by expressly promising to pay the same. There is no averment of any promise either by Timothy Flynn or by the defendant, his executrix. It is clear, therefore, that the declaration raises no other question than whether the action may be maintained under the "Act for the relief of creditors against heirs and devisees."

In considering this question, it is to be borne in mind that the declaration does not aver either—*first,* that Timothy Flynn in his lifetime sold or aliened any of the lands that came to him by devise from Thomas, or, *second,* that Timothy, by his will, devised those lands or any of them to the defendant.

In *Congar* v. *Brady, supra,* suit was brought against an heir-at-law of a deceased devisee of the original debtor. A demurrer to the declaration presented the question whether by virtue of the statute the defendant was chargeable with the payment of the obligations of the original debtor to the extent of the value of the lands so descended. This question was answered in the negative, the opinion declaring: "An examination of the statute will at once disclose that although it makes the devisee of a deceased debtor liable for his debts, no action is given against any successor to the title of such devisee. The right of action is not given for the purpose of creating and enforcing a lien upon the lands devised. It is not the land but the devisee who is made liable for the indebtedness. That liability is purely personal, and survives, if at all, not against the heirs, but against the executors and administrators of the devisee upon his decease."

It seems to us that if the statute by proper construction does create a purely personal liability on the part of the devisee; that liability would, on general principles, survive against his personal representative upon his decease. To quote from *Williams on Executors* *1593: "The general rule has been established from very early times, with respect to such personal claims as are founded upon any obligation, contract, debt, covenant, or other duty, that the right of action on which the testator or intestate might have been sued in his lifetime

survives his death and is enforceable against his executor or administrator. Therefore, it is clear that the executors or administrators are answerable, as far as they have assets, for debts of every description due from the deceased, either debts of record, as judgments, statutes or recognizances; or debts due on special contract, as for rent or on bonds, covenants, and the like, under seal; or debts on simple contract, as notes unsealed, and promises not in writing, either expressed or implied."

In at least two previous decisions the Supreme Court had expressed views at variance with the decision in *Congar v. Brady*, above cited. In *St. Mary's Church v. Wallace*, 5 *Halst.* 311, it was held upon much consideration that in an action against surviving heirs of a deceased obligor the heirs of a deceased heir having lands by descent should be joined in the action, or their non-joinder might be pleaded in abatement. This was upon the ground that (where the lands have not been aliened prior to suit brought) the heirs are responsible for the debt only with respect to and to the extent of the lands descended; that if the lands have passed through more than one descent the heir of the heir is liable; and that where there are several heirs all ought to be joined in the suit to the end that they may have contribution from each other. The learned opinions delivered by Chief Justice Ewing and Mr. Justice Ford wholly negative the theory that (except for false pleadings or the like, or the alienation of the lands prior to suit brought) there is any personal liability on the part of the heir. In *Muldoon v. Moore*, 26 *Vroom* 410, the decision proceeded upon the ground that in an action under our statute, a creditor of a deceased obligor may recover in an action against the heir or devisee either—*first* (if defendant plead properly), a special judgment requiring the debt to be made only out of lands descended or devised to defendant which have not been by him *bona fide* aliened before the commencement of the action; or, *second* (if defendant plead falsely or improperly or fail to plead), a general judgment for the debt as if it were a debt of the defendant; or, *third* (if the lands have been *bona fide* aliened before action brought), a like general judgment, but only for the value of those lands.

In view of these conflicting decisions respecting the proper construction of our act, it may be proper to briefly review the practice in England, both under the common law and under the act (3 and 4 *Wm. & M., c.* 14) upon which our statute was for the most part modeled.

At the common law, heirs were liable on specialties of the ancestor only when he had assumed by express mention of "his heirs" to bind them; and then they were held liable (except for false pleading or the like) only for the lands descended to them. Prior to the act of parliament, the heir might alien the lands free of any charge by reason of the ancestor's debt, and he was not in that event even bound to answer for their value (at least not in an action at law), but if suit was brought on the obligation before alienation the lands were bound in the hands of the heir, and the obligee upon recovery could have execution on the lands descended, even in the hands of an alienee pending suit. But he could have no further recovery, unless the heir had made himself personally liable by false pleading or otherwise. The hardship upon creditors consequent upon allowing the heir to alien before suit brought and without being responsible even for the value of the lands, was relieved by the act of William and Mary, which provided that where the heir did thus alien he should be liable to the value of the lands descended, but that the lands aliened should not be liable. The same act, for the first time, gave a remedy against devisees, for since devisees did not come within the words of the obligation (not being in the description of "heirs"), they could formerly enjoy the land or alien it free from any claim of creditors (at least at law) against either the alienee or themselves; for remedy of which the act 3 and 4 *Wm. & M., c.* 14, gave an action against devisees upon such obligations as bound the heirs.

This act is found in 3 *Stat. at L.* 481; 1 *Ev. Stat.* 462; and the substance of it (but without the preamble) is given in *Bac. Abr., tit. "Heir and Ancestor,"* ¶ F. It was made in terms to continue for three years only, but was made perpetual by act of 6 and 7 *William III., c.* 14.

Its title is, "An act for the relief of creditors against

fraudulent devises." After a preamble which recites that persons "having by bonds or other specialties bound themselves and their heirs" have, to the defrauding of such creditors, by their wills disposed of their lands so that the creditors have lost their said debts, it is at the outset enacted that as against such creditors all wills and testamentary dispositions of lands shall be void. It is next enacted that "every such creditor" may maintain his "action of debt upon said bonds and specialties, against the heir and heirs-at-law of such obligor or obligors, and such devisee and devisees, jointly, by virtue of this act; and such devisee or devisees shall be liable and chargeable for a false plea by him or them pleaded, in the same manner as any heir should have been for any false plea by him pleaded, or for not confessing the lands and tenements to him descended."

The fifth section (after a preamble which recites that heirs-at-law, to avoid the payment of such just debts as in regard of the lands descended to them they have been liable to pay, have aliened such lands before any process was or could be issued against them) enacts that "where any heir-at-law shall be liable to pay the debts of his ancestor in regard of any lands, tenements or hereditaments descending to him, and shall sell, alien or make over the same before any action brought or process sued out against him, that such heir-at-law shall be answerable for such debt or debts in an action or actions of debt, to the value of the said land so by him sold, aliened or made over; in which cases all creditors shall be preferred, as in actions against executors and administrators, and such execution shall be taken out upon any judgment or judgments so obtained against such heir, to the value of the said land, as if the same were his own proper debt or debts; saving that the lands, tenements and hereditaments *bona fide* aliened before the action brought shall not be liable to such execution."

The sixth section enables the heir to plead *riens per descent at the time* of the original writ brought or the bill filed against him, and the plaintiff may reply that he had lands, &c., from his ancestor *before* the original, &c., and if upon

issue joined it be found for the plaintiff, the jury shall inquire of the value of the lands so descended, and thereupon judgment shall be given and execution shall be awarded as · aforesaid; but if judgment be given against such heir by confession of the action, without confessing the assets . descended, or upon demurrer, or *nihil dicit,* it shall be for the debt and damages, without any writ to inquire of the lands, tenements or hereditaments so descended.

By section 7 it is enacted "that all and every devisee and devisees made liable by this act shall be liable and chargeable in the same manner as the heir-at-law by force of this act, notwithstanding the lands, tenements and hereditaments to him or them devised shall be aliened before the action brought."

For a general review of the English law and practice, both before and after the act of William and Mary, reference may be had to *Bac. Abr., tit. "Heir and Ancestor,"* ¶¶ F, G and H; *Vin. Abr., tit. "Heir,"* ¶¶ C and D; *Davy* v. *Pepys, Plowd.* 438, and reporter's comments thereon; note to *Jeffreson* v. *Morton,* 2 *Wms. Saund.* 7, note 4; *Griff. L. Reg.* 1286; *St. Mary's Church* v. *Wallace,* 5 *Halst.* 311; *Muldoon* v. *Moore,* 26 *Vroom* 410; *Myers* v. *Weger,* 33 *Id.* 432, 439.

That by the ancient common law, the heir when sued for the debt of his ancestor could, by confessing the action and showing what lands he had by descent, limit the recovery to a judgment specially to be levied of the lands descended, is clear from all the authorities. The form of pleading and judgment may be found in *Davy* v. *Pepys, Plowd.* 438, 440, a case that antedated by more than a century the act of 3 and 4 William and Mary. See, also, *Tidd* *937, 938.

And likewise, prior to the act, it had been repeatedly held that in case of the death of the heir before action brought, the creditor could sue his heir in his stead, and so on through any number of inheritances. *Anon.* (22 *Eliz.*) *Dyer* 368, pl. 46; *Jenks' Case, Cro. Car.* 151; *Dennyes Case, Noy* 56, where the court said the liability of the heirs extended unto the tenth degree.

In an early book of entries (*Rast. Ent.* 172, *b, pl.* 4) there

is found a form of declaration for an action of debt to be
brought against the executor of an heir upon an obligation of
the ancestor.   Although this precedent was often referred to
(note to *Henningham's Case, Dyer* 344a; note to *Davy* v.
*Pepys, Plowd.* 441; Chief Justice Dyer's comment in *Hinde*
v. *Lyon,* 2 *Leon.* 11; 3 *Id.* 64, 70), we are unable to find that
this course of procedure (by suit against the executor of an
heir) was followed or approved in any reported case.   In *Bac.
Abr., tit. "Heir and Ancestor,"* ¶ F, written after the act of
William and Mary, the precedent referred to is cited in a note,
but in the text is the following:   "It seems that neither before
nor since this statute the executor or administrator of the heir
are liable; for the person of the heir is not chargeable, but
with respect to the land," &c.

In *Bowyer* v. *Rivet, Poph.* 155, Mr. Justice Doderidge is re-
ported to have said:   "Debt will lie against his (the heir's)
executor, as it is said in *Plowden's Commentaries,* and so
against the heirs of the heir to many generations, albeit of
this Plowden makes a doubt," &c.   A reference to Plowden,
however (at *p.* 441), makes it plain that his doubt was
whether there was any liability on the part of the executor of
the heir, not whether the heir of the heir was liable.

In 1 *Lil. Mod. Ent.* 147 is a form of declaration against the
heir of the heir of the heir of the original debtor; and in 2
*Lil. Mod. Ent.* 504 is the form of a special judgment in an
action against an heir in the third degree.

It seems to us that by the reason of the matter, as well as
by the weight of authority, it must be taken to have been the
law of England, prior to the act of William and Mary, that
upon the death of an heir the liability, in respect of the lands
descended, devolved upon his heirs and not upon his personal
representatives.   The action (except for false pleading or the
like) was, in effect, an action to enforce a lien upon lands, and
that only, and it followed the lands so long as they passed by
successive inheritances.   And such was the view taken by our
Supreme Court in *St. Mary's Church* v. *Wallace,* 5 *Halst.* 311.

There followed the act of William and Mary with its very
clearly expressed purpose of rendering all devises void as

against creditors, and subjecting devisees to action *in the same manner and to the same extent* that heirs were theretofore liable (of course, with the modifications contained in the act itself) ; requiring indeed that the heirs and devisees should be sued jointly.

And then came our act of 1797, giving a more extensive remedy to creditors, in that it includes obligations arising "whether by simple contract or specialty, and whether the heirs are mentioned therein or not," but making no essential change in the character of the remedy. It authorizes an action to be maintained "against the heir and heirs-at-law and devisee and devisees of such debtor, in case such debtor made any last will and testament." It omits the word "jointly," used in this connection in the act of William and Mary, but we think it at least permits, if it does not require, that the heirs and devisees be joined in a single action. At least, it very clearly evinces the intent that devisees shall be subjected to the like liability with heirs.

As this court pointed out in *Dodson* v. *Taylor*, 24 *Vroom* 200, 204, the statute is remedial, and should receive a liberal interpretation.

Excluding, for the present, those provisions of the act that have to do with alienations before suit brought, and the consequent liability imposed upon the heir or devisee thus aliening, it seems to us plain that in the case of heirs and devisees alike no personal liability is imposed (save for their own improper pleading or failure to plead), and that the action is in effect an action to enforce a lien upon the lands of the debtor in the hands of his heirs and devisees; and that as no number of inheritances would at the common law operate to deprive the creditor of his action, so, under the statute, the action may be maintained against not only heirs and devisees, but against heirs of heirs, devisees of heirs, heirs of devisees and devisees of devisees, so long as the lands of the original debtor remain in the hands of any person by descent or devise.

And this view of the statute is at the same time inconsistent with the theory that the executor of a devisee may be held responsible where the devisee in his lifetime made no

alienation of the lands. The executor, as such, does not succeed to any title to the lands, and would have to pay the debt from personal property, whereby the creditor would be deprived of the direct lien upon the realty that it was the very object of the statute to give him. At the same time, in the case of several heirs and devisees, some dying and others surviving, the question of contribution among them would be hopelessly confused.

This view is borne out by the phraseology of section 6 of the "Act making lands liable to be sold for the payment of debts," passed February 18th, 1799 (only two years after the act now under consideration), found in *Pat. L., p.* 369, and which is now section 1 of the act respecting executions. *Gen. Stat., p.* 1414. This section, in prescribing the form of a writ of execution against lands, provides that "when such execution shall be issued against terre tenants or heirs or devisees (unless they shall have made their estate liable by false pleading or otherwise), it shall only command the sheriff or other officer that of the lands, &c., whereof the ancestor, testator or person deceased was seised on the day when the said lands, &c., became liable as aforesaid, or at any time afterwards, &c., he cause to be made the debt, &c., in said writ mentioned."

Upon full consideration, therefore, it seems to us that the primary object of the statute is to afford to the creditor alternative remedies against the heirs and devisees, dependent upon whether the lands descended or devised have been aliened before suit brought, viz.—*first,* if not so aliened, or with respect to such as have not been aliened, the remedy is in effect an action at law to enforce a lien for the debt upon the lands descended or devised; in this action, if the defendants plead properly, no personal responsibility is imposed, but the judgment and consequent execution are special, and limited in their effect to the lands descended and devised so far as not aliened before action brought. *Second.* In case of such alienation, the lands aliened being freed from the debt by the express terms of the act, a personal liability to the extent of their value is imposed upon the heir or devisee who has made the alienation, as a substitute for the lien upon the lands of

which the creditor has been thereby deprived. *Third.* But the statute further provides (and this may be called its secondary object) that for false pleading, or for confession of the action without confessing the assets descended, or if judgment go against defendant upon demurrer or *nihil dicit,* there shall be a personal judgment (at least, if the plaintiff so elects) for the amount of the debt, irrespective of the value of the lands descended or devised.

This view of the statute is substantially in accord with that adopted by the Supreme Court in *Muldoon* v. *Moore,* 26 *Vroom* 410, and is consistent with the earlier decision of the same court in *St. Mary's Church* v. *Wallace,* 5 *Halst.* 311.

As already pointed out, the declaration in the case before us does not aver that Timothy Flynn, the devisee, in his lifetime, sold or aliened the lands devised, or any part of them, and without this it shows no ground of recovery against the defendant as his executrix, because it shows no personal liability on Timothy's part; and the declaration does not aver that he (Timothy) at his death devised the lands of the original debtor, or any of them, to the defendant, and without this it shows no ground for suing defendant as devisee.

The judgment under review should therefore be reversed, and final judgment be entered in favor of the defendant, with costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER. BERGEN, VOORHEES, BOGERT, VREDENBURGH, CONGDON, JJ. 11.

NOTE.—On March 18th, 1912, before the entry of *remittitur,* upon leave and motion of defendant in error, a rule for reversal was entered, which provided that the record and proceedings should be remitted to the Sussex County Circuit Court, with power within the next term after the *remittitur* went down to open the judgment and allow plaintiffs to amend their declaration, by including an averment of the devise from Timothy Flynn to the defendant, and such further amendment as might be necessary to charge defendant as devisee.—REP.