## BEALS *v.* NEDDO.

*(Circuit Court, D. Kansas.* February, 1880.)

MORTGAGE—DURESS—ASSIGNEE WITHOUT NOTICE.—Duress is not available, as a defence upon the foreclosure of a mortgage, where the note and mortgage were purchased before maturity, for value and without notice.

In Equity.

*Peck, Ryan & Johnson,* for plaintiff.

*Danthill & McFarland* and *Martin & Milehan,* for defendants.

FOSTER, D. J. The plaintiff, Charles L. Beals, filed his bill in equity against the defendants, A. P. Neddo and Louisa

Neddo, his wife, for a decree of foreclosure of a certain mortgage made by said defendants, on February 1, 1876, on 160 acres of land in Shawnee county, the same then and now being the homestead of defendants, which mortgage was made to J. H. Fairbanks to secure a negotiable promissory note, for the sum of $1,500, bearing even date herewith, and payable three years after date. Before the maturity of said note, and on March 27, 1877, the said Fairbanks indorsed said note and assigned said mortgage for a valuable consideration to this plaintiff, who had no notice of any infirmities in said papers, or of any equities against the same.

Louisa Neddo sets up in her answer to plaintiff's bill that she was induced to sign said mortgage, as also the note, under threats of personal violence from her husband, said A. P. Neddo; and that by reason of said duress she never gave her voluntary consent to said contract, and that the said mortgage is null and void. The evidence tends to show that on the day of the execution of the paper by Mrs. Neddo her husband threatened that if she did not sign said mortgage he would cut her throat; that at the time he made the threat he had in his hand a large pocket knife, and the threats were made in the presence of a grown son and daughter of Mrs. Neddo; that shortly afterwards, in a few minutes, the notary came into the room with the papers, and Mrs. Neddo signed and acknowledged the same in his presence; that there was nothing in her appearance or manner to excite the suspicion of the notary, or cause him to think she was acting under duress or excitement; that the money was borrowed and used mainly to pay off a prior mortgage on said homestead given by defendants.

The constitution of the state (section 9, art. 15) and statute (Gen. St. 473, § 1) provide that the homestead shall not be alienated without the joint consent of husband and wife. The constitutional and statutory provision makes the consent of both husband and wife necessary to the validity of the conveyance, and if the consent of either is wanting, the deed or mortgage is illegal *in toto*, and gives no title or lien whatever on the premises. In this respect it seems to change

the common-law rule, which would only invalidate the instrument so far as the party signing under duress was concerned, and it results that the husband is equally benefited with the wife under this defence, if it prevails, although he is the only party in fault.

If the constitution and statute are susceptible of construction permitting such defence, and the supreme court of this state appear to so hold in *Anderson* v. *Anderson*, 9 Kas. 112, and *Helm* v. *Helm*, 11 Kas. 19, it is probably predicated upon the ground that the husband is the agent of the grantee in procuring the signature of the wife to the conveyance, and is bound by his acts. *Bank* v. *Copeland*, 18 Md. 305. In any event, it is a defence which defendants, for the purpose of saving their homestead, have a great inducement to make, and once made a grantee, however innocent and however *bona fide* he has acted, is very much at a disadvantage.

The wife has, and in justice ought to have, the right to protect her home against an improvident husband; but she should assert her right, so far as possible, in a manner not to deceive and defraud parties purchasing or loaning money on the homestead in good faith. Of what occurs in the privacy of the family circle he can know but little or nothing. The wife signs the paper in the presence of the notary, and acknowledges the execution to be her voluntary act, and makes no sign of dissatisfaction. The grantee pays the purchase money, or makes the loan, entirely unconscious of any defect in the conveyance, and after the lapse of years the wife asserts her rights to annul the contract. It is a defence which, under many circumstances, does not present equities superior to those of the grantee. It opens wide the door for collusion between husband and wife to defraud the unsuspecting purchasers; and courts of equity in any case, before declaring such a conveyance void, ought to require the wife to make a clear and plain showing of fraud or duress, and that she is not guilty of collusion, laches, or fault on her part.

Whether the evidence for the defendants in this case makes such a showing I need not discuss, for it is settled by the

supreme court of the United States that this defence is not available against the purchaser of the note and mortgage before maturity, for value, and without notice.

The doctrine is old and indisputable that the holder of negotiable paper, before maturity and without notice, takes it clear of equities between the original parties, and neither fraud nor duress would invalidate it in his hands. See *Clarke* v. *Pease*, 41 N. H. 425, where this matter is fully discussed and authorities cited; also, *Hogan* v. *Moore*, 48 Ga. 162. So, also, is the doctrine that a purchaser, by deed of real estate, without notice, may rely upon the record, and will take the title free of equities between the original parties. *Boone* v. *Chiles*, 10 Pet. 210; *Deputy* v. *Stapleford*, 19 Cal. 305; 1 Story's Eq. Jur. 64, 434, 436. As to the question whether the purchaser in good faith of a promissory note before maturity, who takes an assignment of a mortgage securing the same, takes the security as the note free of equities, is one upon which there is some conflict among the decided cases, but the great weight of authority is to the affirmative. It is sufficient for this court that the supreme court of the United States has so held. The security is but an accessory to the debt, and follows the note and takes the same character. *Carpenter* v. *Logan*, 16 Wall. 271, 275; *Sawyer* v. *Pickett*, 19 Wall. 147; 1 Jones on Mort. § 834, and cases cited.

It follows that the plaintiff is entitled to his decree as prayed for in his bill.