## MEMPHIS BETHEL *v*. BANK.

### (*Jackson*. May 11, 1898.)

1. CORPORATION BONDS. *Rights of holder as collateral security.*

One who, in good faith, receives negotiable corporation bonds from the ostensible owner as collateral security for his individual debt, without knowledge or notice, actual or constructive, that the depositor held same as trustee, or that the transfer was made in breach of his trust, will be protected against the true owner or *cestui qui trust* to the extent of the amount justly due on the debt thereby secured. (*Post, pp. 131–135.*)

Cases cited: Smith *v*. Railroad, 91 Tenn., 221; Caulkins *v*. Gaslight Co., 95 Tenn., 693; Merritt *v*. Duncan, 7 Heis., 156; Taylor *v*. Pope, 5 Cold., 413; Ramsey *v*. Clark, 4 Hum., 243; Stephenson *v*. Landis, 14 Lea, 433; Van Wych *v*. Norvill, 2 Hum., 195; McFerrin *v*. White, 6 Cold., 499; Causey *v*. Yates, 8 Hum., 606; Oppenheimer *v*. Bank, 97 Tenn., 97.

2. INNOCENT PURCHASER. *Usury.*

An otherwise innocent holder of negotiable paper as collateral security will not be denied protection to the extent of the amount lawfully due on the secured claim, by reason of the fact that some usury may have been originally included therein. (*Post, pp. 132, 133.*)

Cases cited: McFerrin *v*. White, 6 Cold., 499; Causey *v*. Yates, 8 Hum., 606; Oppenheimer *v*. Bank, 97 Tenn., 97; Ramsey *v*. Clark, 4 Hum., 243; Stephenson *v*. Landis, 14 Lea, 433.

---

### FROM SHELBY.

---

Appeal from Circuit Court of Shelby County. L. H. ESTES, J.

C. W. HEISKELL and J. R. FLIPPIN for Bethel.

METCALF & WALKER for Bank.

WILKES, J.   The complainant is a charitable corporation.   It owned certain taxing district bonds, payable to bearer, and being for $1,000 each.   The treasurer of the corporation pledged two of these bonds to the Continental National Bank for a loan of $2,000 for individual account, executing his note, with the bonds as collateral, in the usual form. The corporation received no benefit from this loan, and did not authorize it, nor give any authority for the pledge or use of the bonds as collateral.   The original note for which the bonds were pledged was discounted by the bank at seven per cent.   The note was, from time to time, renewed, sometimes at seven and at other times at eight per cent. discount, the last renewal of the note being given October 5, 1895, payable thirty days thereafter.

On October 28, 1895, the Bethel notified the bank that it was the owner of the bonds, and demanded delivery of same or payment of their value, without tendering the amount due the bank on the note. The demand was refused, and the bank sold the bonds February 7, 1896, for $2,025, their market value, and applied the proceeds to the payment of the note.

It is shown that the treasurer had been, and was at the time, a man of financial and moral standing; that the loan was made by the bank in the usual

way and at the usual bankable rate, and that the bank had no knowledge or notice or reason to suspect that the treasurer did not own the bonds and had no right to pledge them. They were evidently used under the belief that they could and would soon be redeemed without injury to anyone.

The Bethel sought to replevy the bonds, but not being able to seize or get possession of them, it prosecuted this action of detinue for their value.

The only question insisted upon in the record, all others being waived, is whether the bank, under this state of facts, can hold the bonds, or their proceeds, against the Bethel, which is the legal owner. It is conceded that the owner of specific personal property may retake it from any person who has received it from one who, through breach of trust or theft, has obtained possession of it, and transferred or delivered it to another, even though the latter is an innocent purchaser, and has paid full value for it. *Taylor* v. *Pope*, 5 Cold., 413, and cases cited; *Van Wych* v. *Norvill*, 2 Hum., 195. It is also conceded that the rule does not apply to negotiable securities, bills of exchange, bonds, and notes, provided they come into the hands of an innocent holder for value in due course of trade. 20 Johns., 645; *Van Wych* v. *Norvill*, 2 Hum., 195; Daniel on Neg. Insts., 780.

It is insisted that there cannot be an innocent holder for value of forged paper, or paper executed under duress, or paper deposited as an escrow and

put in circulation before condition performed, and many other cases are instanced. Likewise it is insisted there can be no innocent holder for value in due course of trade when the contract is usurious between the parties, as in this case. Counsel for plaintiff cites, in support of this contention, *Ramsel* v. *Morgan*, 6 Wend., 575; *Hall* v. *Wilson*, 16 Barb., 555. But these cases are not in accord with the later case of *Williams* v. *Tift*, 36 N. Y., 319, and are not in line with other authorities or those of our own Court.

In case of *Oates* v. *First Nat. Bank*, 100 U. S., 10 Otto., 239–248, it was held that the lender is a holder for value when he takes collateral security for the loan, even though the loan be usurious.

In *McFerrin* v. *White*, 6 Cold., 499, it was held that if a note be void, the security given for it is also void, but if it is valid to some extent, and if the usury do not appear on the face, it is valid to the extent of the money loaned and legal interest thereon, and only void as to the usurious excess. See, also, *Causey* v. *Yates*, 8 Hum., 606, and the recent case of *Oppenheimer* v. *Bank*, 13 Pickle, 97.

The principle is that the holder is entitled to recover only the actual amount paid out and legal interest, and to that extent is an innocent purchaser. *Ramsey* v. *Clark*, 4 Hum., 243; *Stephens* v. *Landis*, 14 Lea, 433.

It has been held that the purchaser of negotiable corporation bonds from the ostensible owner, though

he be in fact only a trustee, and his sale a breach of trust, confers perfect title upon the buyer, even against the *cestui que trust*, if the purchase was in good faith, for full value and without knowledge or notice, actual or constructive, of the existence of the trust. *Smith* v. *Railroad*, 7 Pickle, 221. To the same effect we cite *Caulkins* v. *Gaslight Co.*, 1 Pickle, 693; *Merritt* v. *Duncan*, 7 Heis., 156.

In Rand on Commercial Paper, it is said: "When negotiable securities are stolen, the owner may pursue them, or the proceeds of them, until they reach the hands of a *bona fide* holder for value ·before maturity. But trover will not lie for them against such holder, although he may have purchased directly from the thief. But a *bona fide* holder who has received them by way of collateral, will only be protected as such to the extent of the debt secured." 3 Rand Com. Paper, Sec. 1683. See, also, 2 Daniel Neg. Insts., Sec. 1496; *Murray* v. *Lardner*, 2 Wall., 110; *Seybell* v. *Nat. Currency Bank*, 54 N. Y., 288.

These principles are decisive in this case. The plaintiff allowed its treasurer to have possession of its bonds. They were negotiated by him to the bank, which had no notice of his want of ownership or authority to pledge them. There was nothing to put the bank on its guard or· arouse its suspicion. In such case it cannot be made to suffer the unavoidable loss which must fall upon one or the other of the parties. The Bethel could have

protected itself by requiring a sufficient official bond
from its treasurer, or by making deposit of its
bonds so as to prevent their being put upon the
market, whereby innocent purchasers might be impli-
cated, or the bonds could have been so marked and
labeled as to carry notice of their ownership when-
ever or wherever presented.

The judgment must be affirmed with costs.