# CASES

# FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1918.

## Connell W. Porter, Appellee, v. First National Bank of Chicago, Appellant.

### Gen. No. 24,074.

1. BILLS AND NOTES, § 259*—*what are defenses not available as against bona fide purchasers.* Duress and failure of consideration are, under the Uniform Negotiable Instruments Act (J. & A. ¶ 7640 et seq.), personal defenses between the parties to a negotiable instrument and cannot be invoked against innocent purchasers for value in due course of business.

2. GAMING, § 18*—*when payee of draft indorsed under coercion while gambling may not recover amount thereof paid by drawer to innocent holder.* Where the payee of draft, under coercion and while gambling, indorses it in blank and the indorser negotiates it to a third person who purchases it innocently, for value and in due course of business, and payment is refused by the drawee, acting under directions from the drawer, who had been instructed by the payee, after he indorsed the draft, to refuse payment, such payee cannot recover from the drawer the amount of the draft, and protest fees paid by it to such innocent holder and charged against the payee's deposit with the drawer.

3. GAMING, § 18*—*when statutes relating to have no application.* Rev. St. ch. 38, secs. 131, 132, 136 (J. & A. ¶¶ 3734, 3735, 3739), relating to gaming, have no application to an action by the payee of a draft, indorsed by him in blank under coercion and while gambling, to recover against the drawer for paying the draft to an innocent holder in due course and for value.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Municipal Court of Chicago; the Hon. JOHN F. HAAS, Judge, presiding. Heard in this court at the March term, 1918. Reversed with judgment of *nil capiat* and for costs here. Opinion filed October 1, 1918.

E. E. BROWN and J. N. OTT, for appellant; JOHN N. OTT, of counsel.

R. WILSON MORE and ORPHEUS A. HARDING, for appellee; ORPHEUS A. HARDING, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal by defendant from a judgment against it in favor of plaintiff for $105 entered upon the finding of the court to whom the cause was submitted for trial without a jury. The facts not in dispute are about as follows:

August 8, 1917, plaintiff bought a draft of defendant for $100 drawn on Wells Fargo Nevada National Bank of San Francisco, California. With this draft in his pocket plaintiff took a train at Chicago bound for San Francisco. On the way out on a Sunday, while the train was speeding through the State of Montana, plaintiff accepted an invitation of three fellow passengers (whom plaintiff thereafter had reason to suspect were card sharpers) to play for modest stakes a game of chance with cards, known to the gambling fraternity as "stud poker." It is the usual story—plaintiff lost his money. The gambling games were played in a stateroom of a Pullman car. Plaintiff put the draft in question, in the condition in which he had received it from defendant, among the betting money upon the table upon which the interested parties were playing, and lost the draft to his gambling companions. At this stage of the proceeding the gamblers gathered in the spoils of the game then upon the table, including the draft, and realizing, we presume, that unindorsed the draft was valueless, demanded of plaintiff that he write his name on the back, which he did,

252    APPELLATE COURTS OF ILLINOIS.

Porter v. First National Bank of Chicago, 212 Ill. App. 250.

as he claims, under coercion and threat of physical violence. The indorsement was made in the vicinity of the City of Butte, Montana. At the City of Spokane, Washington, the gamblers alighted and plaintiff wired defendant not to pay the draft, assigning no reason for the request. The gambler who had the draft in his possession registered at the Davenport Hotel, Spokane, in the name of plaintiff, and the hotel people cashed the draft without any further indorsement. In due course of banking the hotel deposited the draft in its local bank for collection, which bank forwarded it to San Francisco for payment by the drawee, who, following instructions received from defendant, acting upon plaintiff's telegram not to pay, refused to pay the same. Thereupon the draft was in due form protested for nonpayment, charges therefor being $5, and sent to the Corn Exchange National Bank of Chicago for collection, which bank presented it to defendant and demanded payment of the amount of the draft with protest fees. Defendant acceded to this demand and charged plaintiff the amount of the protest fees in addition to the face amount of the draft. Plaintiff then instituted this suit to recover the $105 paid by defendant and charged to his account.

From the foregoing statement it is clear that all the parties to whom the draft in suit came after plaintiff parted with it to the gambler were innocent holders for value without any notice of plaintiff's rights, legal or equitable, if any such he had.

By the statutes of this State gambling is unlawful. Plaintiff gambled away his draft and indorsed it with his own name and delivered it to the gambler who won it from him in a manner prohibited by law. Should plaintiff's contentions be sustained, then the Davenport Hotel, which cashed the draft, must be the innocent victim and lose its money.

Plaintiff is responsible for all the complications here presented, which were brought about by his infraction

of the laws against gambling. It is patent that none of the parties dealing with the draft, save plaintiff and his fellow gamblers, had any knowledge of the circumstances surrounding plaintiff at the time he indorsed and parted with the draft. Plaintiff's signature being genuine was a sufficient protection to an innocent party subsequently dealing with the draft in due course of business. Had defendant continued to refuse to pay the draft, it would have been amenable to an action at law to recover its amount with protest fees.

The so-called Uniform Negotiable Instruments Act is the statute law of the States of Montana, Washington and Illinois. In these several States some part of the transaction regarding the draft in suit took place. The draft was drawn in Illinois, indorsed and delivered in Montana and cashed in Washington. Consequently it is immaterial as to the law of which State is applied to the transaction, as they are all the same. In these States duress and failure of consideration are personal defenses between the parties and cannot be invoked against innocent purchasers for value in due course of business. *Beals v. Neddo,* 2 Fed. 41, Section 74, ch. 98, Rev. St. (J. & A. ¶ 7695) provides that:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

This section is likewise the statute law of Tennessee, the Supreme Court of which State has construed it in the case of *Unaka Nat. Bank v. Butler,* 113 Tenn. 574, on facts similar to those found in the case at bar. In the *Butler* case, *supra,* the document involved was a lost check. In construing the statute, in the language quoted, *supra,* from the Illinois statute, the court held that where a negotiable bank check, indorsed

in blank and lost, is purchased by a merchant in due course of trade, within one week after its issuance, from a customer who is unknown to him, but supposed to be the payee, without further indorsement or inquiry as to the identity of the customer, such purchaser acquires a perfect title to the check, and is entitled to payment; in consequence of which the loser of the check loses his title and is not entitled to recover the amount thereof from the bank. The essential elements of this case are present in the case now being considered. The indorsement was genuine, it was in blank, it was received in payment in due course by one who was innocent of any defenses in the hands of the holder, who was not further identified. The difference in the two cases is that in the *Butler* case the check was lost and merchandise was given for it to the holder, while in this case the indorsement of the payee of the draft and its delivery were obtained by duress and the holder was given cash for it.

Plaintiff relies upon sections 131, 132 and 136, ch. 38, of the Criminal Code (J. & A. ¶¶ 3734, 3735, 3739) and certain decisions of our Supreme Court relative thereto. It is sufficient to say that neither the statute nor the decisions is applicable to this case.

The record shows without doubt that the Davenport Hotel at Spokane cashed the draft in suit in due course of its business without actual notice or knowledge of any infirmity in the title of the holder, and that there was no bad faith in the transaction. The Davenport Hotel therefore acquired perfect title to the draft by cashing it, and with it the right to collect it, and the plaintiff lost his title to it and is not entitled to recover the same from defendant.

For the foregoing reasons the judgment of the Municipal Court is reversed and a judgment of *nil capiat* and for costs entered in this court.

*Judgment reversed with judgment of nil capiat and for costs here.*