EUGENE J. BERNSTEIN and Another, Copartners, Trading under the Firm Name and Style of BERNSTEIN BROS., Plaintiff, *v.* GUS J. FUERTH, Trading as G. J. FUERTH & Co., Defendant.

Municipal Court of New York, Borough of Manhattan, Third District,
June 15, 1928.

Payment — action by seller to recover purchase price of merchandise for which defendant gave check — seller subsequently indorsed and delivered check to third party for gambling debt on steamboat en route from Boston to New York — seller advised defendant check had been lost and requested defendant to stop payment — defendant complied with request, but on being pressed for payment issued second check to attorney for holder of original check, to whom third party had made delivery — transfer of check to third party constituted election of seller to accept payment and to release defendant — defense of payment is good — check had valid inception and is not void under Penal Law, §§ 991–993 — failure to show that indorsement and delivery of check was illegal agreement, bars defense of illegality.

This is an action to recover the purchase price of merchandise delivered by plaintiff to defendant and for which defendant in turn gave his check for the agreed price. Subsequently to the delivery of the check, plaintiff indorsed and delivered the instrument to a third party on board a steamboat *en route* from Boston to New York, to cover a gambling loss. Plaintiff, on his arrival in New York, advised defendant that he had lost the check and on request, defendant stopped payment. Defendant, however, on being pressed for payment caused plaintiff to admit the circumstances under which the check had been given, and then issued a second check to the attorney for the party holding the original check, who, as a holder in due course, had received the original check from the party to whom the plaintiff had delivered it.

The transfer of the check to the third party constituted an election of plaintiff to accept payment thereby and to release defendant on the original debt, and, therefore, the defense of payment is good.

The check, although given in payment of a gambling debt, was not void, in the hands of a holder in due course, under sections 991–993 of the Penal Law, for it had a valid inception as between the defendant maker and the plaintiffs; the taint of illegality, if any, did not attach until after the check had become a valid and subsisting obligation in the hands of the plaintiffs.

The plaintiffs have failed to establish that the indorsement and delivery of the check to the third party was an illegal agreement, since there is no evidence that the gambling or delivery of the check took place in this State, and there is no proof as to where the gambling actually occurred or as to the law of any State prohibiting gambling outside of this State.

ACTION by seller to recover purchase price.    Defense of payment.

*Harry J. Moskowitz* [*Louis M. Weber* of counsel], for the plaintiffs.

*Louis H. Solomon,* for the defendant.

CHILVERS, J. This is an action to recover the purchase price of certain muskrat skins sold and delivered by plaintiffs to the defendant for the agreed price of $345.

The defendant admits the sale, delivery and amount of the purchase price and sets up the defenses of payment and accord and satisfaction.

The agreed facts are as follows

The merchandise in question was sold on December 2, 1926, and on the same day the defendant handed to one Eugene J. Bernstein, one of the plaintiffs herein, his check in the amount of $345, the agreed price of said merchandise. It is conceded that for the purposes of this action there were ample funds on deposit in defendant's bank to pay this check.

Some days subsequent to the delivery of said check, the said Bernstein indorsed and delivered said check to a third party. Bernstein's testimony is that this transaction took place on board a steamboat *en route* from Boston to New York and that the said check was given to said third party in payment of losses sustained by said Bernstein in a card game on board said steamboat.

Upon his arrival in New York next morning, said Bernstein advised the defendant that he had lost said check and requested defendant to stop payment on same. Defendant complied with this request and payment was stopped by defendant's bank.

Some time later, the plaintiff Bernstein admitted to the defendant that the said check had been indorsed and delivered to a third party under the circumstances above set forth.

In the meantime defendant was being pressed for payment of said check and it was in response to his demand for the truth that plaintiff's admission as set forth in a letter in evidence was made.

After some negotiations between plaintiffs and defendant relating to indemnity in the event that defendant should issue a second check to plaintiffs, the defendant refused to issue such check and thereafter, and on or about December 17, 1926, issued a second check in evidence, in the sum of $345 to one Peter P. McElligott, attorney for one Costobulus, the holder of the original check.

It is conceded that said Costobulus was a holder in due course and that he received the original check from one Scocos, the third party to whom said Bernstein had delivered it.

The acceptance by a creditor of a debtor's check operates as a conditional payment of the debt and no action may be maintained on such debt until demand has been made on the debtor's bank for payment and payment refused, or the creditor has tendered the check to the debtor. (*Battle* v. *Coit*, 26 N. Y. 404; *Cohen* v. *B. N. C. Waist Co.*, 192 N. Y. Supp. 849.)

The creditor's right against the debtor on the debt is not extinguished but merely suspended by his acceptance of a new right, viz., to payment to himself or his order, out of the debtor's funds in a designated depository. In the event of refusal of the bank to pay, the creditor may elect to stand on his new right, *i. e.*, to bring an action against the debtor on the check or to revive his original right, *i. e.*, to sue on the original debt.

The debtor's corresponding duties are likewise affected. His duty to the creditor on the original debt is likewise suspended and in place thereof there arises on the delivery of his check a new duty to provide sufficient funds to honor such check upon maturity whether in the hands of the creditor or a holder in due course.

In the event the creditor transfers said check to a third party, his right to payment thereon is under the Negotiable Instruments Law transferred to the third party.

In the meantime the debtor's position has changed. He now owes a duty to the transferee to pay the check on presentment. His agreement with the creditor was to pay him or his order and upon the transfer his duty to the creditor on the check ceases and becomes a duty to the transferee.

The transfer of the check to a third party, where the check was accepted by the creditor as conditional payment subject to become absolute on either payment or transfer, constitutes the election of the creditor to accept payment thereby and to release the debtor on the original debt. Analyzed, it constitutes an election to accept the conditional right as absolute and to consent to a transfer of the duty owing the creditor to the transferee.

Wherever, therefore, the check is outstanding after maturity in the hands of a third party and an action on the original debt is commenced by the creditor, a defense of payment is good.

This view was held by the Court of Appeals at an early date, following numerous English, New York and United States Supreme Court authorities.

In *Battle* v. *Coit* (26 N. Y. 404) the court said as follows (at p. 406): " * * * When the principal and incident are separable, and the incident is transferred, it becomes the principal as between the parties to the transfer, and the principal to which it was originally an accessory, becomes either absolutely extinguished or temporarily suspended. Bills of exchange and promissory notes, payable at a future day, received by a vendor of chattels, of his vendee, or by a creditor of his debtor, not as absolute payment, are within this class. While they are held by the vendor or creditor, and before their maturity, the right of action upon the original consideration upon which they were received, is suspended. They operate as a

conditional payment of such consideration, and if they are transferred, and remain in the hands of the assignee after maturity, so long as they so remain they operate as an absolute payment of the original consideration upon which they were taken."

That case was followed in *Fitch* v. *McDowell* (145 N. Y. 498, 501), and in the case of *Skolsky* v. *Harvitt* (121 N. Y. Supp. 592) Mr. Justice GUY, writing for the court, followed *Fitch* v. *McDowell* (*supra*).

In all of the above cases the reasoning of the courts proceeded on the assumption that the negotiable instruments involved were merely held outstanding by third parties, and whereas in the instant case the check had actually been paid to a transferee of the third party, the rule would seem to apply with even greater force since the debtor by payment had performed the duty undertaken and all outstanding rights in the premises had been extinguished by such performance.

Unless, therefore, there are present in the instant case facts which remove it from the operation of the above rule, the judgment must be for the defendant.

The plaintiff contends that the defendant herein was under no duty to pay the amount of the check to Costobulus, the conceded holder in due course in the instant case, because the check having been transferred from the plaintiff Bernstein to Scocos in payment of a gambling debt was void, even in the hands of a holder in due course, under sections 991, 992 and 993 of the Penal Law as construed in *Larschen* v. *Lantzes* (115 Misc. 616).

That was an action against the maker of a check given by the *maker* thereof to pay money lost in playing at cards by a holder in due course.

Mr. Justice GUY writing the opinion, stated that he could find no adjudication in the courts of the State making such a check void in the hands of a holder in due course. But on the authority of *Sabine* v. *Paine* (223 N. Y. 401), holding that the statute declaring usurious instruments void is not repealed expressly or by implication by the Negotiable Instruments Law, and that a note void in its inception for usury is void in the hands of an innocent holder for value, he felt constrained to apply the same rule to an instrument declared void under sections 992 and 993 of the Penal Law.

That decision is not, however, applicable to the facts of the instant case where the check had a *valid inception* as between the defendant maker and the plaintiffs.

The sections of the Penal Law above stated protect the *loser* against a subsequent claim on the instrument by the *winner* or his *indorsee*. But the defendant here is not the loser and indeed has had no part in the gambling. He made and delivered the

check for a full, legal and valuable consideration and is not entitled to the protection afforded the loser by the Penal Law.

Assuming, without deciding, that the plaintiffs could raise the defense of illegality against a holder in due course if sued on their contract of indorsement, such immunity clearly would not extend to the defendant; the taint of illegality, if any, did not attach until after the check had become a valid and subsisting obligation in the hands of the plaintiffs, and to hold that an act on the part of the payees can render void, in the hands of a holder in due course, a theretofore valid negotiable instrument duly negotiated would result in injustice and confusion in commerce unwarranted by the public policy involved.

The gambling denounced by sections 992 and 993 of the Penal Law is made illegal but *not criminal.* (*Thuna* v. *Wolf*, 130 Misc. 306, 307.)*

Moreover, a consideration of the decisions under sections 370 *et seq.* of the General Business Law prohibiting usury sustains the soundness of this position.

Both the usury and the gambling statutes declare void instruments and contracts made in violation of their respective provisions and the courts have relied on authorities under one statute as controlling under the other.

Where an instrument has had a valid inception, *i. e.*, where it has been delivered for value and free from usury, the subsequent transfer of the instrument at an usurious discount does not render the note void for usury and the transferee may sue the maker and recover the face amount of the note. (*Joy* v. *Diefendorf*, 130 N. Y. 6, 10; *Chase Nat. Bank* v. *Faurot*, 149 id. 532, 539; *Schanz* v. *Sotscheck*, 167 App. Div. 202, 211; *Edelstein* v. *Mechlowitz*, 92 Misc. 170.)

In *Joy* v. *Diefendorf* (*supra*) the court stated the rule (at p. 10) as follows: " The rule which renders void a note in the hands of a third party, who has purchased at a discount greater than the legal interest applies to instruments that have no inception between the parties or which are not intended to be available until discounted. This note in suit does not fall within that rule."

Thus, while the transaction whereby a payee who has paid full value for a note or check discounts the note or check to a third party at an usurious rate of discount to provide himself with funds, differs but little from one where the same person issues his own note or postdated check at the same rate of discount, yet in the latter case the transaction is usurious and the note or check is void, while in the former instance the transaction is legally enforcible.

The courts have thus refused to apply the highly penal provisions of section 373 of the General Business Law to any instrument having a valid inception. Such an instrument has by its inception brought into being legal relations which are unaltered by its subsequent history.

In the case of a void instrument, however, having never had an inception, it is a mere simulacrum and no legal relations are engendered by its existence.

Applying the reasoning of the courts with respect to instruments void under the usury laws to sections 992 and 993 of the Penal Law, the same result must follow.

An instrument which has its inception in a gambling transaction, as where the loser executes and delivers to the winner either his own note or check or the note or check of another which has never theretofore been delivered for value, is void.

But once a note or check has been negotiated free from the taint of usury or other illegality, its subsequent transfer history cannot render it void in the hands of a holder in due course.

Its original valid negotiation has created certain legal rights, duties, etc., which are not thereafter extinguished by the conduct of other parties to the instrument, especially where the rights of innocent persons are concerned.

The tendency of the modern decisions is as Mr. Justice GUY points out, in a quotation from Williston on Contracts (*Larschen* v. *Lantzes, supra,* 618) to protect such persons: " The tendency of the modern law in regard to instruments illegal because based on a gambling consideration is to protect the holder in due course."

But even if the instant case were outside the general rule set forth above there is another objection to holding that payment has not been proved by the defendant.

In accordance with the general rule of contracts that the validity thereof is to be determined by the *lex loci contractus,* the courts of New York have held that contracts arising out of gambling or other prohibited transactions will be enforced in this State where the contract was entered into and performed by the plaintiff in another State where such transaction is sanctioned by law or not prohibited. (*Thompson* v. *Lakewood City Development Co.,* 105 Misc. 680; aff'd., 188 App. Div. 996; *Huber* v. *D'Esterre,* 180 id. 220; *Hennenlotter* v. *De Orvananos,* 114 Misc. 333; *Thuna* v. *Wolf,* 130 id. 306; revd., 132 id. 56.)

In *Thuna* v. *Wolf (supra)* the Appellate Term, First Department, refused to enforce a check given in Florida in payment of a gambling debt on the ground that as payment was to be made at a New York bank the contract was executory and was to be

performed in New York, and was governed by the law of New York under which the check was void. The court intimated, however, that had the action been on the agreement made in Florida instead of the check, a different problem would be presented.

But it has been settled that the indorsement of a negotiable instrument is an independent contract and is governed by the law of the place where it is made (*Heidelburger* v. *Heidelburger*, 171 App. Div. 106), and where the one possible illegality with respect to this check could arise from its indorsement, unless the indorsement was made in a State having laws similar to sections 991–993 of our Penal Law, such contract of indorsement was legal and enforcible here.

The plaintiff Bernstein testified that the gambling transaction and the delivery of the check to Scocos took place on a steamboat between Boston, Mass., and New York city, but there is no testimony that the gambling or delivery of the check took place in New York State, and there being no proof as to where the gambling actually occurred or as to the law of any State prohibiting card playing for money outside of New York, the plaintiff has failed to show that the indorsement and delivery of the check to Scocos was an illegal agreement. Under the common law gambling at cards was not prohibited and since such gambling has been made illegal in this State by statute, to wit, section 991 of the Penal Law, and contracts based thereon rendered void by sections 992, 993 of the said law, the court cannot assume that the statutory law of another State is similar to our own, but such statute, if any, must be proved. (*Weissman* v. *Banque De Bruxelles*, 221 App. Div. 595.)

For all of the foregoing reasons, I find that the defendant has established his defense of payment and is entitled to judgment.

Judgment for the defendant.