MANUFACTURERS & MECHANICS BANK OF KANSAS CITY, RESPONDENT, v. TWELFTH STREET BANK ET AL., BEN PORTMAN, APPELLANT.*

Kansas City Court of Appeals. March 4, 1929.

---

*Corpus Juris-Cyc References: Bills and Notes, 8CJ, section 1035, p. 770, n. 39, 40; Gaming 27CJ, section 229, p. 1072, n. 83.

*Wilson, Bundschu & Bailey* for respondent.

*Walter W. Calvin* for appellant, Portman.

*Walter A. Raymond* and *Fred W. Coon* for appellant, Goode.

BLAND, J.—Plaintiff filed in the lower court a petition in the nature of a bill of interpleader naming as defendants the Twelfth Street Bank, George Goode and Ben Portman. The Twelfth Street Bank filed a disclaimer. Defendants George Goode and Ben Portman filed answers and intervening petitions, each claiming the proceeds of the checks in question. After hearing the evidence the court rendered judgment ordering the money paid into court; that the proceeds, after the costs were paid, be turned over to the defendant, Goode. Defendant Portman has appealed.

The facts show that on October 22, 1927, defendant Goode procured from the plaintiff, a banking corporation in Kansas City, two cashier's checks, in the sum of $500 each, payable to himself; that on November 2, 1927, he procured from the plaintiff five cashier's checks for $50 each, also payable to himself; that thereafter on November 2, 1927, in Kansas City, he together with one Guy Neece, Tate Dunn and others engaged in a dice game commonly known as shooting craps; in which he lost to Dunn all of the cashier's checks during the course of the game, or, if he did not lose them directly to Dunn, the checks having been used as money in the game, they ultimately fell into the hands of Dunn where they were at the conclusion of the game; that plaintiff authorized Dunn to indorse the checks in plaintiff's name; that on the same day at about ten o'clock P. M., Dunn assigned and delivered the checks to the defendant Portman, receiving from him the full face value of the checks in cash; that on the following day Portman deposited the checks in the Twelfth Street Bank; that when the same were presented to plaintiff bank payment thereon was refused for the reason that defendant Goode had ordered plaintiff not to pay same. Defendant Goode testified that he stopped payment on the checks for the reason that the dice furnished by the other gamblers "were loaded."

The court found that Portman was the holder of the checks "in due course" but that as the consideration for their transfer from Goode to Dunn was the payment of losses in a game of chance the conveyances of the same were absolutely void and of no effect and Portman acquired no right or title to the checks.

It is contended by the appellant that it having been established by the testimony and the court having found that he was a holder of the checks "in due course" he was entitled to recover, and that consequently the court erred in rendering a judgment in favor of the defendant Goode. By the terms of section 5744, Revised Statutes 1919, it is provided:

"All judgments by confession, conveyances, bonds, bills, notes and securities, when the consideration is money or property won at any game or gambling device, shall be void, and may be set aside and vacated by any court of competent jurisdiction, upon suit, brought for that purpose by the person so confessing, giving, entering into or executing the same, or by his executors or administrators, or by any creditor, heir, devisee, purchaser, or other person interested therein."

And section 5742, Revised Statutes 1919:

"Any person who shall lose any money or property at any game or gambling device may recover the same by civil action."

It is admitted by the appellant that under the provisions of section 5744, that as between Goode and Dunn the transfer of the checks was illegal, but that even before the enactment of the Negotiable Instrument Act a cashier's check or other negotiable instrument was valid in the hands of a bona-fide holder for value and before maturity, and even if they were void in the hands of such a party before the enactment of the negotiable Instrument Act, particularly certain sections thereof (see sections 838, 843, Revised Statutes 1919), defining and relating to holders in due course but not mentioning gambling, that these sections of the Negotiable Instrument Act changed the law as theretofore existing. Of course, there is no merit in the contention that prior to the enactment of the Negotiable Instrument Act a check or other negotiable instrument given or transferred in a gambling transaction was valid in the hands of a bona-fide purchaser for value before maturity. [See Morris v. White, 83 Mo. App. 194.] We do not think that the Negotiable Instrument Act changed the law in reference to the matter. [8 C. J. p. 768; 27 C. J., p. 1072; Plank v. Swift, 8 A. L. R. 309 (Ia.); Levy v. Doerhoefer, 188 Ky. 413; Fisher v. Brehm, 126 Atl. 444; Farmers State Bank v. Clayton Nat'l Bank, 245 Pac. 543; Bank v. Jacobs, 74 W. V. 525.]

In the case of Fisher v. Brehm, supra, l. c. 445, the court said:

"Where one statute is relied upon to repeal another by implication the latter statute must be clearly repugnant to the former or be manifestly intended to cover the same subject-matter by way of revision. [Hotel Registry Corporation v. Stafford, 70 N. J. Law, 528, 57 A. 145.] Repeals by implication are never favored. Id. A court should endeavor by a reasonable construction to uphold both acts.

An application of these rules leads us to hold that the gaming and negotiable instrument acts are not inconsistent, but irreconcilable (reconcilable); that the third section of the gaming act is not repealed by the Negotiable Instruments Law; and that an obligation made void by the gaming act between the parties cannot be made a valid obligation in the hands of an innocent holder for value."

In the case of Levy v. Doerhoefer, supra, quoting from a prior decision of that court (l. c. 418) it is said:

"'It has been the policy of this State to suppress gaming, and the statutes making gaming contracts void are founded upon what the Legislature has for many years deemed to be sound public policy. It is inconceivable that the general assembly, in the passage of the Act of 1904 for the protection of innocent holders of negotiable instruments, intended to or did repeal section 1955, Kentucky Statutes 1903, which declares all gaming contracts void. In our opinion the disappointment now and then of an innocent holder of a negotiable instrument, would not be as hurtful and injurious to the best interests of the State as the removal of the ban from gaming contracts.'"

We have examined the case of Rumping v. Ark. Nat'l Bank of Hot Springs, 121 Ark. 202, cited by the appellant. In that case l. c. 209, the court said:

"The statute just quoted only reaches, by the express terms thereof, to notes or securities executed by the loser at a gaming device, or by one who has borrowed money or property to be bet at a gaming device. The statute does not include drafts which are issued upon a valid consideration and endorsed to another, even if the assignment is a part of the gaming transaction."

The Supreme Court of our State held directly to the contrary in Williams v. Wall, 60 Mo. 318, 321, where the court said:

"No doubt is entertained that the indorsement from plaintiff to Bailey, falls within the inhibitions of the act under consideration, as it is a fresh and substantive contract and may be regarded either as a security (2 Bonv. L. Dict. 493), or as a new bill (Slacum v. Pomery, 6 Cranch, 221; Coffee v. Planters Bk. of Tenn., 13 How., 183; Van Staphorst v. Pearce, 4 Mass. 258), within the meaning of that act; and unless such construction be given thereto, the wholesome provisions of this statute can with ease be evaded, by simply indorsing for gaming purposes, antecedent securities, whose consideration is altogether legal; thus defeating the evident intent which gave origin to the statute."

In the case of Porter v. First Nat'l Bank of Chicago, 212 Ill. App. 250, cited by the defendant, the court did not consider the effect of a statute declaring a transfer of a security, such as a check, in a gambling transaction to be absolutely void. It stated l. c. 252, that there was a statute in the State of Illinois making gambling "unlaw-

ful.'' In that case the matter of duress in the transfer of the draft and failure of consideration on the ground that gambling was unlawful were involved. There is a distinction between a statute declaring the act to be unlawful or illegal and a statute declaring that the act shall be absolutely void. [8 C. J., pp. 766-769.] Where the statute declares the act to be void the paper attempted to be transferred remains in the transferor uneffected by the indorsement and transfer. In other words in contemplation of law there is no indorsement or transfer.

In the case of Keim v. Vette, 167 Mo. 389, 403, the court said:

''But there is one exception to this rule, and that is, when a statute declares a contract void, it gathers no vitality by its circulation in respect to the parties executing it; but it and the instrument evidencing it are void in the hands of every holder. . . .

''The distinction runs through the various cases; if the statute makes the contract void, it is invalid as to everybody whose rights are affected by it.''

Where the execution of the instrument is under such circumstances that the act is merely illegal or voidable, then the instrument is valid in the hands of a holder in due course. Such was the situation in the case of Newton Co. Bank v. Cole, 282 S. W. 466, cited by the appellant.

There is no merit in the contention that in view of the fact that a cashier's check is ordinarily not subject to countermand by the payee after indorsement, for the reason that it is merely a bill of exchange drawn by the bank on itself and accepted in advance by the act of issuance (see 7 C. J. 702), that Goode had no right to stop payment and appellant is entitled to recover. Here, the title to the checks was not in the indorsee but remained in the payee in the checks. In contemplation of law there was no indorsement of them. The bank in issuing the checks did not agree to pay them at all events but only on the implied understanding that it would do so to the one lawfully entitled thereto. Appellant was not lawfully entitled to the checks and, therefore, is in no position to complain that payment on them was stopped. [McGinn v. Bank, 178 Mo. 347, 354; Bathgate v. Exch. Bk. of Chula, 205 S. W. 875.]

The judgment is affirmed. *Arnold, J.,* concurs, *Trimble, P. J.,* absent.