WINECOFF OPERATING CO., INC., *v.* PIONEER BANK *et al.*

(*Knoxville,* September Term, 1942.)

Opinion filed November 7, 1942.

THOMAS, FOLTS & BROWN, of Chattanooga, for appellant.

TOM S. THACH, of Chattanooga, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Pioneer Bank issued its cashier's negotiable certificate for $300 to V. L. Norrell, who subsequently endorsed and delivered it to P. A. King in payment of a gambling debt. Thereafter, King endorsed and delivered the check to complainant, operating Winecoff Hotel, in due course for full consideration, without notice of the gambling transaction, as the Chancellor and Court of Appeals concurrently found.

Meanwhile, however, Norrell, the payee, had notified the maker Bank not to pay the check, and the Bank refusing payment upon presentation, the Hotel Company brought this suit. The Bank brought in Norrell by cross bill.

The Chancellor, on the authority of *Manufacturers' & Mechanics' Bank of Kansas City* v. *Twelfth Street Bank,* 223 Mo. App., 191, 16 S. W. (2d), 104, dismissed the bill awarding Norrell the fund paid in to the Court by the Bank, and the Court of Appeals affirmed, applying our Code, sections 7812 and 7818, conceiving this case to be controlled by *Snoddy* v. *American Nat. Bank,* 88 Tenn., 573, 13 S. W., 127, 7 L. R. A., 705, 17 Am. St. Rep., 918. Result: One gambler gets the money; the other gets it back from an innocent party.

The facts of the instant case differ essentially from those of the *Snoddy Case.* In both cases the negotiable instrument had passed into the hands of a *bona fide* purchaser for value and without notice. But in the *Snoddy Case* the instrument was originally founded on and issued for a gambling debt and was void in its inception, by the express terms of our statute, (Code, section 7812), which provides that, ''All contracts founded . . . on a gambling or wagering consideration, shall be void to the extent of such consideration''; while in the instant case the ''contract'' is a Bank cashier's check ''founded'' on a cash consideration wholly free from gambling or wagering. The transaction on which it was ''founded'' was free from taint of illegality. The gambling taint attached to it, if at all, in the progress of its subsequent negotiation.

In two later cases this Court approved the holding of the *Snoddy Case,* but in both cases permitted the *bona fide* holder in due course to recover from the maker,

on the ground that the records in these cases failed to show that the instruments sued on were *void* in their inception. *Jefferson Bank* v. *Chapman-White-Lyons Co.*, 122 Tenn., 415, 123 S. W., 641; *Cohn* v. *Lunn,* 133 Tenn., 547, 182 S. W., 584. In the *Cohn Case* it was said that in the *Snoddy Case* "it was held that a note given for a gaming consideration was void in the hands even of an innocent holder; but in the later case of [*Jefferson*] *Bank* v. *Chapman* [*-White-Lyons Co.*], . . . it was said that *Snoddy* v. *Bank* was based on an express statute, making the contract void in direct terms." In this State, therefore, the rule that denies recovery to an innocent holder in due course is limited to cases where the instrument is void by the express terms of a statute.

The holding of the *Snoddy Case* is sustained by the great weight of authority, although the rule is conceded to work a hardship on innocent purchasers of negotiable paper, favorites of the law, but its application being justified by public policy. However, we find this rule applied by the great weight of authority, only in cases like our *Snoddy Case,* where the instrument was void *ab initio,* from its inception, because within the express terms of a statute so declaring. And this view is supported by reason. No subsequent negotiation could give life to a contract which never had it. This is true of a forged paper negotiable in form.

A distinction appears to be well recognized by many authorities between such cases and those in which the illegality arises subsequently, in the course of negotiation of the instrument.

Also, the distinctive principle is illustrated by the general holding that a negotiable paper, when once legally issued and thereafter lost or stolen, may be recovered on by an innocent holder in due course for value. See

*Memphis Bethel* v. *Continental Nat. Bank,* 101 Tenn., 130, 45 S. W., 1072; *Bank* v. *Butler,* 113 Tenn., 574, 83 S. W., 655, and authorities cited in these cases.

In this Court respondent Norrell, in his reply to the petition for *certiorari,* relies chiefly on *Manufacturers' & Mechanics' Bank* v. *Twelfth Street Bank, supra,* followed by the Chancellor, asserting that this case and that are "identical." He also cites Code, section 7818, providing that, "Any person who negotiates for value, and without giving notice to the purchaser, any negotiable instrument, founded in whole or in part on any gaming or wagering consideration, is guilty of a misdemeanor."

Counsel, after quoting this Section, says:

"It was held in the case of *Cohn* v. *Lunn,* 133 Tenn., 547, 549, 182 S. W., 584, 'A note executed in violation of a penal statute is absolutely void not only between the parties, but even as against an innocent holder.'"

Counsel, no doubt inadvertently, misquotes materially the holding of the Court. Counsel confuses what the Court said was *"insisted",* with what the Court, declining to adopt this insistence, held. After stating that, "It is insisted, that, inasmuch as the note in question was executed in violation of a penal statute, it was absolutely void, not only between the parties, but even as against an innocent holder," Chief Justice Neil writing the opinion, comments: "It is clear that a note given in violation of a penal statute would be void as between the parties," citing cases. But he then proceeds to refer to the *Snoddy* and *Chapman Cases* in the language we have hereinbefore quoted, limiting the rule of invalidity in the hands of innocent holders to those cases where the instrument was subject to an express statutory provision declaring it void.

■■ Moreover, independently of this, we are not impressed with the argument that Code, section 7818, evinces an intention of the Legislature to extend the void rule to innocent holders of negotiable paper in due course, where the paper had a valid inception, but was subsequently negotiated for a gaming consideration; rather to the contrary. Our statute expressly declaring void all contracts founded on a gaming consideration (Code, section 7812) was enacted in 1799. This Code section 7818, declaring it a misdemeanor to negotiate for value a "negotiable instrument, founded," etc., was enacted in 1843-44. We think it fair to assume that the Legislature, recognizing that the Act of 1799 did not meet the evil of negotiation, found it desirable to take care of such cases, but not deeming it advisable to extend the void rule thereto, thus further hampering the negotiability of negotiable instruments in commerce, expressly limited the remedy to punishment of the offending party. Bearing directly on this point, we quote from 24 Am. Jur., p. 453: "Where the statute merely forbids gaming or wagering, declares it illegal, makes gaming or wagering a crime, etc., without expressly declaring contracts or negotiable instruments void Courts generally hold that a holder in due course may enforce an instrument given [or a *priori* transferred] for such consideration." The text proceeds: "This distinction is not followed by all Courts, it having been held that a note need not be expressly declared void by statute if it is so declared by implication." This with qualification is our rule: "The rule is that a bona fide holder of negotiable paper, executed as part of a transaction prohibited by statute, may enforce its collection, except where the statute has expressly or by *necessary* implication declared it void." *Frazier* v. *Lafferty*, 150 Tenn., 105, 263 S. W.,

978. We italicize the qualifying adjective. Even under this minority rule, the holder in due course may enforce a negotiable instrument in Tennessee, in harmony with our statutes.

Now, however sound may be the holding of the Missouri intermediate court, relied on for respondent, in that jurisdiction, it is not authority for a like conclusion in this State. We find this decision to be elsewhere cited, and it appears to be the leading authority for this view. The Missouri statute, Rev. St. 1919, section 5744, Mo. R. S. A., section 3394, construed and applied in that case, is much broader in its terms than ours. As has been seen, our statute is expressly limited, in declaring such contracts ''void,'' to those ''founded'' on a gambling consideration, ''to the extent of such consideration,'' whereas the Missouri statute does not contain this limiting language, but declares void, ''all judgments by confession, conveyances, bonds, bills, notes and securities,'' and provides that all such ''may be set aside and vacated'' upon suit ''by the person so confessing, giving, entering into or executing the same,'' etc. The Missouri Court held this language to express an intention to include ''conveyances'', or ''sales'' of ''securities'' effected by transfers for a gambling consideration made by endorsement of notes and securities originally issued for a valid consideration. It was on this construction of this broad language, and this process of reasoning, that the Missouri Court reached the conclusion that the statute rendered the transfer of this paper, not originally issued for a gambling consideration, void and, therefore, not collectible by an innocent transferee for value. The opinion does not apparently question the principle that unless void by statute a holder in due course of negotiable paper, without notice, is protected; but construes

the Missouri statute as declaring the subsequent transfer for a gaming consideration void, and so relating the transaction by which the paper passes to the innocent holder denies protection to such a holder.

Patten's Digest of Legal Opinions (2 Ed.), Vol. II, at pages 2006, 2007, notes the general rule, applied in our *Snoddy Case,* that innocent holders for value of negotiable paper void in its inception because issued for a gambling consideration are not protected. For the rule that such holders cannot recover on paper free from gambling taint at inception, when subsequently trans-ferred for a gambling consideration, Patten cites *Manu-facturers' & Mechanics' Bank* v. *Twelfth Street Bank, supra,* and *Farmers State Bank* v. *Clayton Nat. Bank,* 31 N. M., 344, 245 P., 543, 46 A. L. R., 952. We find this case also cited in 24 Am. Jur., Paragraph 76, under gaming, etc.

In this *New Mexico Case,* as in the Missouri case dis-cussed above, the decision rests on the Court's construc-tion of a State statute even broader, perhaps, than the Missouri statute. However, the opinion does not discuss the distinction between paper void in its inception and that subsequently passed for gambling, but is devoted to a discussion of the question whether or not the holder is protected by the negotiable instruments act. Follow-ing the great weight of authority it was held that this act did not apply. Other cases sometimes referred to as bearing on the question, such as *Nielson* v. *Planters Trust & Savings Bank,* 183 La., 645, 164 So., 613, and *Hurley* v. *Union Trust Company,* 244 App. Div., 590, 280 N. Y. S., 474, are not in point. In both of these cases the immediate endorsee, with full notice, was seeking to collect the paper.

■ Our examination satisfies us that the great weight of authority, text book and decision, recognizes and supports the rule that when a negotiable instrument is valid in its inception it is enforcible by a holder for value, in due course, despite its intermediate transfer for a gaming consideration.

In point is this statement from 10 C. J. S., Bills and Notes, at page 1105, section 502, under the subheading *Intermediate Illegality*: 'If an instrument had a valid inception, it is no defense to an action by a holder in due course that it was subsequently transferred for an illegal consideration or in connection with an illegal transaction,'' citing *Bernstein* v. *Fuerth,* 132 Misc., 343, 229 N. Y. S., 791, and *Guaranty Bank of Oklahoma City* v. *State Bank of Stratford,* 106 Okl., 216, 233 P., 727.

And, even more directly in point, 10 C. J. S., Bills and Notes, on page 1106, section 502, treating of ''Gambling Transactions,'' the rule is thus stated:

''That an instrument was given in connection with an illegal gambling transaction is not a defense against a *bona fide* holder, except where a statute declares such an instrument void without exception,'' this being the rule in Tennessee,—''such statutes being unaffected by the enactment of the Negotiable Instruments Act; nor can the defense of illegality be asserted as to a note valid in inception but subsequently transferred for a gambling consideration,'' citing *Bernstein* v. *Fuerth, supra,* and *Poshkoff* v. *Bernstein,* Sup., 159 N. Y. S., 206; 27 C. J., p. 1073, note 86.

It will be observed that in the last foregoing paragraph the precise situation now before us is dealt with. However, while thus stating the rule, the text notes that ''other authority is apparently to the contrary,'' but cites only *Manufacturers' & Mechanics' Bank of Kansas*

*City* v. *Twelfth Street Bank,* which we heretofore discussed and distinguished.

 Turning to 27 C. J., at page 1073, cited above by C. J. S., under the subject "gaming," we find the rule to be thus stated:

"An indorsement and delivery of negotiable paper to pay a gambling debt does not make the *indorsee* a holder in due course, and no title passes *between the immediate parties."* (Italics ours.) But, the text proceeds, "If such paper finds its way into the hands of an innocent holder for value before maturity, it is too late to set up the illegality of the endorsement and transfer," citing *Tindall* v. *Childress,* 2 Stew. & P., Ala., 250; *Rumping* v. *Arkansas Nat. Bank,* 121 Ark., 202, 180 S. W., 749; *Sullivan* v. *German Nat. Bank,* 18 Colo. App., 99, 70 P., 162; *Porter* v. *First Nat. Bank of Chicago,* 212 Ill. App., 250.

This text writer proceeds to say that, "in some states the statute declares the paper void in the hands of all holders," citing only *Chapin* v. *Dake,* 57 Ill., 295, 11 Am. Rep., 15. We find that the decision of this case, by a Court divided four to three, turned on the construction of the Illinois statute, as indicated in the text, a statute much broader in its terms than ours. We add in passing that the Annotator in 56 A. L. R., at p. 1326, calls attention to the subsequent holding in *Porter* v. *First Nat. Bank,* 212 Ill. App., 250, that since the passage of the negotiable instrument act the *bona fide* holder may recover, that the gaming statute no longer controls. However, this application of the negotiable instrument act appears to be clearly against the great weight of authority.

It appears from our examination that the following cases, mentioned supra, clearly support the rule that the right of a *bona fide* holder for value without notice, to

recover on a negotiable paper valid in its inception is not affected by its intermediate transfer for a gaming consideration. *Rumping* v. *Arkansas Nat. Bank*, 121 Ark., 202, 180 S. W., 749; *Guaranty Bank* v. *State Bank*, 106 Okl., 216; 233 P., 727; *Bernstein* v. *Fuerth*, 132 Misc., 343, 229 N. Y. S., 791; *Tindall* v. *Childress*, 2 Stew. & P., Ala., 250; *Poshkoff* v. *Bernstein*, Sup., 159 N. Y. S., 206.

The Arkansas case construes a statute substantially like ours and holds that it applies only to instruments given for or founded on gaming, not to subsequent transfers for such a consideration to innocent holders.

*Bernstein* v. *Fuerth* is perhaps most frequently cited, although not decided by a Court of last resort, probably because it is so well reasoned. In this case the payees of a check transferred it in payment of a gambling debt and the check later came to the hands of a holder in due course, to whom it was paid. The action was by the payees against the drawer to recover on the original debt. In holding that there could be no recovery, the court said [132 Misc., 343, 229 N. Y. S., 796]:

"The taint of illegality, if any, did not attach until after the check had become a valid and subsisting obligation in the hands of the plaintiffs [the payees], and to hold that an act on the part of the payees can render void, in the hands of a holder in due course, a theretofore valid negotiable instrument duly negotiated, would result in injustice and confusion in commerce, unwarranted by the public policy involved."

The opinion referred to holdings of the New York Court of Appeals (among them *Chase Nat. Bank* v. *Faurot,* 149 N. Y., 532, 44 N. E., 164, 38 L. R. A., 410), in cases of usury, applicable by analogy, that if a note had a legal inception, usury in its transfer could not be

availed of to defeat it in the hands of a *bona fide* holder. We quote:

"The courts have thus refused to apply the highly penal provisions of section 373 of the General Business Law to any instrument having a valid inception. Such an instrument has by its inception brought into being legal relations which are unaltered by its subsequent history. In the case of a void instrument, however, having never had an inception, it is a mere simulacrum, and no legal relations are engendered by its existence."

In *Guaranty Bank* v. *State Bank,* the Oklahoma Court, although gaming was not involved, stressed the distinction here involved, saying [106 Okl., 216, 233 Pac., 728], "In its inception, the certificate was given by defendant bank to defendant Arnold for a cash deposit," the situation in the instant case, "this certificate was valid and regular in its inception in the hands of Mr. Arnold, although he was deprived of same by the fraud," etc.

In conclusion, we mention *Tindall* v. *Childress,* cited in 27 C. J., p. 1073, and annotated in 56 A. L. R., at p. 1326. This is an old case (1832), the opinion written and reasoned in that clear and concise style characteristic of that period, illustrated in our older cases. The Alabama gaming statute involved was even broader than our own, but it was held, quoting the headnote, that, "A note executed on sufficient consideration, but lost by an assignee on a horse race, can not be avoided by the payor, in the hands of a subsequent innocent holder, under the statute of 1807, on the subject of gambling considerations." In that case, as in the *Bernstein Case,* N. Y., *supra,* the Court properly found analogy, on principle, in usury cases, and quoted from the opinion of

LORD KENYON, in *Parr* v. *Eliason et al.*, 1 East, 92. Says the Alabama Court:

"It was contended at the trial, LORD KENYON presiding, that the indorsement of the bill by the plaintiff to the bankrupts, for a usurious consideration, avoided the security, by the statute, 12 Ann., whereby all bonds and assurances, for 'payment of any money to be lent upon usury, etc., shall be void.' But LORD KENYON was of opinion, that the assignees of the bankrupt had a right to protect their possession of the bill by the title of the party from whom they received it in payment, who was an innocent holder; and that the bill being valid in its inception, the statute of usury did not apply to the present case; and the plaintiff was non-suited. A rule to show cause why the non-suit should not be set aside, was obtained, which was argued before the Court of King's Bench, and the rule was discharged. LORD KENYON, who delivered the opinion of the Court, said, 'where the bill itself in its original formation, is given for a usurious consideration, the words of the statute are peremptory, that the assurance shall be void: and the construction which has been put upon the statute, has gone far enough in saying it shall be avoided, even in the hands of an innocent indorsee, without notice. But no case has gone the length which is now contended for; nor do the words of the statute require it. Here the bill was fair and legal in its concoction; and therefore, no advantage can be taken of what happened afterwards against bona fide holders.' "

While the sum here involved is not large, the question, of first impression in this State, is so important in its bearing on the security of holders of negotiable paper, which enters so largely into our commercial transactions,

that we have felt justified in treating the case at some length.

The decree of the Court of Appeals will be reversed and judgment will be entered here in favor of petitioner, Winecoff Operating Company, Incorporated.